Consumers Construction Company, a Corporation, Plaintiff-Appellant, v. American Motorists Insurance Company, a Corporation, Defendant-Appellee.

Gen. No. 69–106.

Second District.

December 31, 1969.

Geister, Schnell, Richards and Brown, of Elgin, Lewis W. Schlifkin and Jerome H. Torshen, of Chicago, for appellant.

O'Brien, Burnell, Puckett and Barnett, of Aurora, for appellee.

PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court.

This is an appeal from a declaratory judgment action brought by the plaintiff, Consumers Construction Company, against the defendant, American Motorists Insurance Company. The trial court entered judgment for the defendant and denied the plaintiff's post trial motion. The plaintiff appeals both rulings.

Plaintiff entered into a contract on April 2, 1962, with the Board of Education of School District No. 46 (Board) to construct an elementary school. The construction was completed on November 15, 1962. Prior to the contract, the defendant issued a Comprehensive General Liability Policy providing coverage to the plaintiff. A certificate of insurance, requested by the Board, was issued to it.

On August 20, 1965, the Board filed a complaint against the plaintiff which charged:

"5. That at divers times during the period of construction the defendant * and its subcontractors whose acts and omissions for which the defendant * is responsible under the terms of said contract, violated same by various acts and omissions contrary to the plans and specifications therein referred to, made a part thereof and provided for by the . . . architect or in the alternative, failed to construct said school in a good and workmanlike manner, to wit:

"(a) Employed subcontractors who were inexperienced in the work they undertook to perform.

"(b) Improperly constructed the caissons supporting the building.

"(c) Omitted the hangers that were to be provided under the cement slab for the support of various piping facilities.

"(d) Improperly supervised and directed various employees and subcontractors." * (Plaintiff herein)

On March 28, 1967, plaintiff filed a complaint for declaratory judgment against the defendant alleging the issuance of the policy; the issuance of the certificate of insurance; the contract between the Board and the plaintiff; completion of the work; the instigation of the suit by the Board; the tender of the defense of that suit to the defendant; the refusal of the defendant to defend and the denial of coverage by the defendant.

Defendant answered the charges of the complaint and denied that their refusal to defend or provide coverage was contrary to the policy, and, by a subsequent and further defense asserted that certain exclusions in the policy specifically excluded the claim asserted in the Board's complaint against the plaintiff.

The Board was allowed to intervene but such intervention has no effect upon the present questions since no appeal has been taken by it. It appears from the record that the court decided the case upon the basis of the pleadings, exhibits admitted by the court, a comprehensive memorandum of law filed by the parties and the arguments of counsel. Being so advised, the court found and ordered that defendant had no duty to defend plaintiff in the Board's case, and that the policy in question provided no coverage to plaintiff under the allegations of that complaint.

The policy in question is composed of four pages of insuring agreements, a declaration page, two rating schedule pages, and 21 endorsements or amendments. It is complex; however, those portions pertinent to these proceedings are:

"Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as dam-

444

ages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

"Exclusions—This policy does not apply: . . .

"(h) Under Coverage B, to injury to or destruction of . . . (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises; . . . ."

From one of the rating schedule pages, followed by rating figures, is the following:

"General Contracting—building construction (not prefabricated):
"Buildings—N.O.C."

■ The parties agree that the exact question presented by the facts of this case and the provisions of the particular policy of insurance have never been passed upon by the courts of review in Illinois. This Court is unable to find precedent in this jurisdiction relating to the specific provisions of the policy but finds several well-reasoned and persuasive decisions from our sister jurisdictions which we believe dispose of the issues in this case.

Provisions identical in substance and almost word for word, were considered by the Court of Appeals of California in the case of Liberty Bldg. Co. v. Royal Indemnity Co., (Cal), 346 P2d 444 (1959). In that case the plaintiff, a building contractor, had constructed a large number of stucco dwelling houses upon its own property, most of which were sold prior to completion. After the buyers took possession, many of the houses developed defects in the outside stucco walls. The buyers brought suit and others lodged complaints against the plaintiff. The plaintiff tendered the defense of the suit to the defendant

insurance company which the insurer refused. Thereafter the plaintiff settled the claims upon the advice of counsel after discovering that the defects in the stucco were due to an improper mixture which allowed water to absorb into the stucco. Suit was brought by the plaintiff-contractor against the insurer to recover the amounts paid in settlement. The trial court dismissed the suit and this was affirmed on review.

In considering the coverage afforded by the policy and specifically the exclusion, the Court found that damage to the stucco was excluded from coverage of the policy. Its reasoning is succinct and is equally applicable to the case at bar. At page 446 of the opinion, the court stated:

> "This breach was assigned as the *cause* of the damage to the stucco, and defendant argues that such damage is excluded under the policy. In this connection, Exclusion (f) expressly excludes from liability under the policy, damage sustained by any 'goods or products . . . or premises alienated . . . or work completed . . . *out of which the accident arises.*' . . . This Exclusion means that if the insured becomes liable to replace or repair any 'goods or products' or 'premises alienated' or 'work completed' after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some *other* property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded. For example, if a contractor builds a house and as a result of an improper mixture of the stucco, water is absorbed into the walls and the stucco cracks and falls off and a child is injured by the falling stucco, the injury to the child would not be

446

excluded under Exclusion (f) but the replacement cost of the stucco would be excluded. Also, if the water absorbed into the walls should reach the interior walls and injure a valuable painting hanging there, the damage to the painting would be recoverable under the policy while the damage to the walls would not. The principle here applicable is well stated in Heyward v. American Casualty Company of Reading, Pa., D.C., 129 F Supp 4. At page 8 the court said: 'This Exclusion means that the policy will not protect the insured if he has to repair or replace some product or work which proved defective and caused an accident. The Exclusion has no reference to liability for damage to *other property* or *personal injury* arising out of such accident.' "

In the present case the complaint is for the negligence in the performance of the contract by the plaintiff. The claim arises out of work completed by the insured for the "damage" caused by its work. No claim is made for damage to another's property. The reasoning of the Liberty case is appropriate and, in this court's view, the results should be the same.

 Plaintiff maintains that there is further coverage under the policy of defendant by reason of the assessment of a particular premium in the premium schedule of "products—General Contracting—building construction (not prefabricated); Building—N.O.C." It is maintained that the specific rating of this item on the rate schedule sheet provides products-hazard insurance and, therefore, defendant agreed to insure the final product rendered by plaintiff to the Board. Allegedly, the presence of this coverage creates an ambiguity and the exclusion set out in "h" (4) must be disregarded. This exact contention was considered by the Supreme Court of Appeals of West Virginia in the case of McGann v. Hobbs Lumber Co., 150 W Va 364, 145 SE2d 476

(1965). In that case the exact and identical coverage and exclusion language was used in the policy considered by the court as is before the court in this case. The schedule attached to the policy contained substantially identical rating information. Exclusion "(j) (4)" referred to in the opinion is identical with Exclusion (h) (4) in the present case. The court, at p 479, stated:

> "The above quoted policy provisions give rise to this controversy. Aetna contends that the damage referred to in this case having occurred to work completed by Hobbs, the insured, Exclusion (j) (4) is operative, and no coverage is afforded. Hobbs, on the other hand, asserts that the inclusion of "(D) Products (Including Completed Operations)", under the General Liability Schedule, is in direct conflict with the above quoted exclusion and creates an inconsistency in this policy. It must be kept in mind that the policy in question is a liability policy, not one insuring the property or work of the insured. Covered is any damage caused by the products or operations used or completed by the insured. In other words, if any product used in the operations of the insured or any work completed by the insured causes damage to any property of another for which the insured may be legally liable, the insurer is liable under this policy. This appears to lend coverage to Hobbs in this case, and it would, except for Exclusion (j) (4) contained in the policy. At this point Hobbs contends that such exclusion is in direct conflict with (D), listed under the General Liability Schedule and quoted above. We do not agree with this contention. The insuring agreement, Coverage D—Property Damage Liability—Except Automobile, and the items designated in the Liability Schedule, including (D), must be read together. These, where pertinent to this case, constitute the coverage af-

forded by this policy, subject to the exclusions. As noted above, Exclusion (j) (4) clearly provides that this policy does not apply to premises alienated by the insured or to work completed by the insured out of which the accident arises. It is undisputed that the damaged premises here involved was that alienated by the insured and was work completed by the insured out of which the accident arose."

In that case Hobbs had been engaged to build a home for McGann. Several months after the home was delivered to McGann a portion of the foundation wall collapsed, resulting in substantial damages. Hobbs brought a third-party complaint against Aetna Insurance Company. The trial court, upon the motion for summary judgment filed upon the third party complaint, found that Hobbs was covered under the policies that Aetna had issued. The trial court was reversed and the cause was remanded.

Plaintiff argues that the Board was misled by reason of an endorsement typewritten on the back of the certificate of insurance issued on April 12, 1962, which provided as follows:

"Page 6 Article 27 of 'THE GENERAL CONDITIONS OF THE CONTRACT FOR THE CONSTRUCTION OF BUILDINGS' is amended to read as follows:

"That portion of Addendum #17 of the specifications as pertains to the Hold Harmless Agreements is amended to read:

"1. To indemnify and save harmless the Board of Education, School District No. 46, Cook, Kane and DuPage Counties, Illinois as Owner, and A. J. DelBianco & Associates, Architects, hereinafter called Owner and Architect, and their

Agents, servants, and employees, individually and collectively, against all loss, damage, or expense which the Owner and/or Architect may sustain, incur, or become liable for on account of injury to or death of person or persons or on account of damage to or destruction of property resulting from execution of work provided for in this contract, *or due or arising in any manner from any omission or any act or negligence of the Contractor or any Sub-contractor or their respective employees.* (Emphasis added.)

"2. To indemnify and save harmless, the Owner and Architect against liability resulting from injury to or death of Contractor or any sub-contractor or any of their respective employees, due to the condition or state of repair of the premises or other property of the Owner and Architect upon, about, or in connection with which any work incident to the performance of this contract is carried on."

█ We fail to see what effect the certificate would have upon the rights between the plaintiff and defendant. The certificate was issued for the benefit of the Board and its architect, but they are not complaining. Since the Board intervened in the suit, but took no appeal from the trial court's interpretation of the language contained in the certificate, it is bound by the court's conclusions on this point.

█ Regardless, the plaintiff relies upon that portion of the certificate which is emphasized in the quoted section above. It argues that this demonstrates a purpose on the part of the defendant to insure against any defective workmanship. If we were to so interpret this portion of the certificate, we would have to conclude that the

policy issued by the defendant was one known as a builder's risk agreement instead of a comprehensive liability policy. We do not so interpret it. Instead we are of the opinion that the certificate, by its plain language, was issued to indemnify and save harmless the Board and its architect from liability arising during the execution of work under the contract, be it on account of damage to or destruction of property or negligence on the part of the defendant, subcontractor or their employees.

■ The law is clear that when ambiguous provisions of an insurance policy are considered they must be construed to afford the most protection to the insured and strictly against the insurer where two interpretations, equally reasonable, are possible. However, the court is not faced with that problem in this case. The policy in question specifically excludes damage to work completed by or premises alienated by the insured out of which the accident arises. The policy in question, although long, is a Comprehensive General Liability Policy. It does not purport to be a Builder's Performance Bond but purports to protect plaintiff, the owner and architect from liability for bodily injury or property damage exclusive of property damage to products or work completed by this insured. There is no reason to rewrite the policy and provide coverage where none was ever anticipated or intended by the clear terms of the contract.

■ The foregoing rules of liberal construction of insurance policies must yield to rules of reasonable construction and will not permit perversion of plain language to create an ambiguity where none, in fact, exists. Miller v. Madison County Mut. Automobile Ins. Co., 46 Ill App2d 413, 418, 197 NE2d 153 (1964). Where the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense. Dodge v. Allstate Ins. Co., 89 Ill App2d 405, 407, 233 NE2d 100 (1967).

██ It is next argued that the Board and plaintiff relied upon the language endorsed upon the back of the certificate of insurance and, therefore, coverage should be enforced against defendant because of the provisions of the Consumer Fraud Act, (Ill Rev Stats 1967, c 121½, § 261 et seq.). This is without merit. The certificate is unambiguous and represents only that a policy had been issued. The policy, of course, is the best evidence of the contract of insurance. The language of the certificate is consistent with the coverage afforded by the policy. We find no fraud or misrepresentation. Further, this point is raised for the first time on appeal and the trial court did not have the opportunity of passing on this point.

██ Finally, it is argued that even if the defendant is not liable under its policy it should still be required to defend the plaintiff because the defendant's policy states that it will defend "any suit against the insured . . . even if the suit is groundless, false or fraudulent." This may have been the case (McFayden v. North River Ins. Co., 62 Ill App2d 164, 172, 209 NE2d 833 (1965)) had the plaintiff not sought a declaration of his rights by this action. However, the court has adjudicated the rights of the parties in the case at bar and therefore the clause referred to is not applicable under these circumstances.

The trial court's judgment and order denying the post trial motion are affirmed.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.