SENTRY INSURANCE CO., Plaintiff-Appellee, *v.* S & L HOME HEATING CO., Defendant-Appellant.

First District (2nd Division)    No. 79-1476

Opinion filed December 9, 1980.

Robert Handelsman and Richard J. Hollander, both of Chicago, for appellant.

Bernard J. Hennessy, of Chicago (Charles R. Purcell, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant S & L Home Heating Co. was named third-party defendant in an indemnity action filed by the general contractor for an industrial plant. The owner of the plant had sued the contractor for damages resulting from a deficient ventilation system, and the contractor impleaded S & L, subcontractor for the ventilation work. The instant case arose when plaintiff Sentry Insurance Co. filed an action for declaratory judgment, seeking to establish that it is not liable for the claimed loss, and not bound to defend its policyholder S & L in the third-party action. The trial court granted summary judgment for Sentry, and S & L appeals.

In 1967, Farley and Boettcher engaged Cable Kamerman and Co. to design and build an industrial plant in Des Plaines, Illinois. Operations in the plant were expected to produce abrasive dust and vaporous solvents and oils, and the specifications called for a heating, ventilation, and air conditioning system (HVAC system) adequate to cope with these substances. Cable engaged S & L to design and install the plant's HVAC system. After the plant began operations, deficiencies in the system became apparent. Noxious vapors in the air impaired the performance of employees, and caused corrosion in some components of the system, notably the heat exchangers and air conditioning compressors.

In 1975, Farley and Boettcher filed an action against Cable, who

impleaded S & L on the basis of an indemnification clause in S & L's contract with Cable. S & L carried a "Comprehensive General Liability Insurance" policy with Sentry, and demanded that Sentry provide its defense in the third-party action. Sentry refused, maintaining that Farley's and Boettcher's complaint (and, derivatively, Cable's third-party complaint) stated a claim not within the coverage of the policy. Cable subsequently settled its third-party complaint against S & L.

S & L's policy covered two general types of loss. The general liability insurance covered damage amounts S & L became legally obligated to pay on account of bodily injury or property damage caused by an "occurrence." S & L's contractual liability insurance covered its losses incurred under contracts to indemnify another party for damages relating to bodily injury or property damage caused by an "occurrence." The general liability and contractual liability coverages were subject to nearly identical lists of exclusions. In granting summary judgment for Sentry in its declaratory judgment action, the trial court relied on the "loss of use" exclusion, which states that no coverage is provided for:

> "* * * loss of use of tangible property which has not been physically injured or destroyed resulting from
> (1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
> (2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured."

This exclusion does not apply to a loss of use resulting from the "sudden and accidental" injury to or destruction of the insured's property or work product.

■■ S & L contends that the trial court erred in finding that the insurance policy provided no coverage for the claimed loss. S & L also argues that Sentry is liable for the cost of defending and settling the third-party indemnity action. We consider S & L's second contention first. The insurer's duty to defend is measured by the allegations contained in the complaint against the insured. If the complaint alleges facts that are potentially within the policy's coverage, the insurer must provide the defense. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24.) Recent cases stress the liberality with which the complaint must be construed; any doubt must be resolved in favor of the insured, as the duty to defend is broader than the duty to pay. (See, *e.g.*, *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928 (collecting cases and summarizing the law on this point).) In the instant case, the trial court's summary judgment in favor of Sentry must be evaluated by this standard. The relevant complaint is the one filed by

Farley and Boettcher, since any liability that might devolve on S & L through the third-party indemnity action necessarily flows from the original complaint. The result below can be affirmed only if the allegations of Farley's and Boettcher's complaint, taken as true, provide no basis for coverage under the Sentry policy. See *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 817, 386 N.E.2d 529.

Farley's and Boettcher's complaint sounds in contract, and alleges that Cable and its subcontractor (*i.e.*, S & L) failed to follow specifications, and failed to provide an adequate HVAC system. The complaint relates that the results of Cable's breach of contract include: deterioration and corrosion of the system's heat exchangers and air conditioning compressors, irritation to the eyes and nostrils of the plant's employees, and reduced productivity by the plant's employees. As noted above, S & L's policy provides coverage for bodily injury and property damage. No one contends that the discomfort experienced by the plant's employees amounted to bodily injury. The policy defines "property damage" as "injury to or destruction of tangible property." The claimed loss of productivity (and, inferentially, profits) is economic loss and not property damage. (See also *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 123-24, 294 N.E.2d 7.) The expense of remedying the deficient HVAC system is also an economic loss and not property damage. (See *Ludwig Candy Co. v. Iowa National Mutual Insurance Co.* (1979), 78 Ill. App. 3d 306, 310, 396 N.E.2d 1329.) The sole loss identified in the complaint that might fall within the definition of "property damage" is the deterioration and corrosion in the heat exchangers and air conditioning compressors.

Sentry argues that, even if genuine property damage has been claimed, the damage was not the result of an "occurrence." The policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The parties disagree on whether "occurrence" is co-extensive with "accident," or is a much broader term. They cite conflicting cases from foreign jurisdictions supporting both constructions of the term. Illinois cases seem not to have taken a position on the issue. The matter is not free from doubt, but guided by the premise that doubts should be resolved in favor of the insured when the insurer's duty to defend is at issue (see *La Rotunda*, at 451), we will provisionally presume that the corrosion in the system was "property damage" caused by an "occurrence."

Given this tentative finding, the next question is whether any of the listed exclusions precludes coverage. The trial court relied on the "loss of

use" exception, set out above. It is clear that this exception cannot apply to the claimed property damage, since the clause, by its terms, applies to "loss of use of tangible property which *has not* been physically injured." (Emphasis added.) Two other exclusions, however, support the trial court's decision. Clause (n) excludes "property damage to the named insured's products arising out of such products or any part of such products"; clause (o) excludes "property damage to work performed by * * * the named insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith." In the instant case, the only loss that may be considered "property damage" is the corrosion and deterioration of the heat exchangers and air conditioning compressors. These items are part of the system supplied by S & L, and are therefore the "products" of the "named insured" S & L. Clause (n) *excludes coverage for property damage to one part of the system caused by deficiencies in other parts of the system.* Clause (o) is similar, but is cast in terms of S & L's work rather than its "products." In both clauses, the import is clear: the policy does not insure against property damage to S & L's HVAC system when the damage has been caused by deficiencies in the same system.

■■■ Although we are mindful of the principle that ambiguities should be construed in favor of the insured (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 424, 401 N.E.2d 539), the application of exclusions (n) and (o) is bereft of ambiguity. In order to reach the provisional conclusion that the Farley and Boettcher complaint alleged property damage within the coverage of S & L's policy, we have accepted the allegations of the original complaint as true, and have favored S & L with broad definitions of "property damage" and "occurrence." Nonetheless, the liberal reading of the insurance policy called for by the *La Rotunda* case does not mean that this court may ignore the plain meaning of exclusions (n) and (o). When the terms of the policy are clear, the insurance contract will be enforced as written. (*Graman v. Continental Casualty Co.* (1980), 87 Ill. App. 3d 896, 900, 409 N.E.2d 387.) The trial court was therefore correct in its conclusions that, as a matter of law, Sentry had no liability to cover the claimed loss and no duty to defend S & L in the third-party action brought by Cable. Although the trial court erroneously applied an inapplicable exclusion clause in reaching its conclusions, a summary judgment will be affirmed whenever facts in the record support the decision of the trial court. *Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 567, 396 N.E.2d 1197.

The judgment of the trial court is affirmed.

Affirmed.

PERLIN, P. J., and DOWNING, J., concur.