THE WESTERN CASUALTY & SURETY COMPANY, Plaintiff-Appellant,
*v.* RICHARD BROCHU *et al.*, Defendants-Appellees.

Second District   No. 82—941

Opinion filed February 22, 1984.

Nunzio C. Radogno, C. Barry Montgomery, and Barry L. Kroll, all of Jacobs, Williams & Montgomery, Ltd., of Chicago, for appellant.

Herbert I. Rothbart, of Chicago, and Michael F. Bonamarte III and James J. DeSanto, both of Waukegan, for appellees.

JUSTICE HOPF delivered the opinion of the court:

The Western Casualty & Surety Company (Western) brought this action for declaratory judgment (Ill. Rev. Stat. 1981, ch. 110, par. 57.1, recodified as section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—701)) before the circuit court of Lake County. Western sought a judicial declaration that a policy of insurance it had issued did not apply to a property damage claim brought against its insured, Mark III Development Company, a corporation (Mark III), and Sig L. Bjerga, its president. The codefendants, Richard and Marita Brochu (the Brochus), who brought the property damage claim against Mark III, filed a motion for summary judgment, arguing Western's policy applied to the occurrence complained of by the Brochus. Mark III joined in this motion. The trial court granted summary judgment, finding that Western was obliged to defend and, upon a finding of liability, indemnify under the policy. Western appeals.

Western raises two issues on appeal. First, it contends the policy issued to Mark III contained certain terms which excluded coverage for occurrences such as that claimed by Mark III; specifically it contends that the policy excluded coverage for both damage to the named insured's products, and to property damage arising out of the work performed by the insured. Western's second contention is that the trial court erred in finding that Western had waived its opportunity to assert a policy defense. It argues that where a policy does not cover a particular claim, coverage cannot be imposed by virtue of waiver. Western contends that whether a waiver occurred is a factual question not properly a subject of a summary judgment proceeding.

The facts of this case reveal that Sig Bjerga (Bjerga), one of the defendants in this cause, purchased insurance for his carpentry business from Western in May 1976. At that time Bjerga was operating as an individual and he purchased a "general comprehensive liability policy" for which he paid a premium of $643 per year.

In September of 1976, Bjerga, who had begun operating as Mark

III Development Company, entered into a home purchase agreement with codefendants, the Brochus. Mark III agreed to construct a home for the Brochus in a "good and workmanlike manner" for the purchase price of $100,300.

Bjerga then modified his insurance coverage with Western by listing Mark III as the insured and increasing his coverage to include, *inter alia*, independent contractors and "completed operations" coverage. The cost of the insurance premium increased to $2,080 in that year. Some of the specific language of the contract, exclusions and coverage, will be set forth with the discussion of the issues below.

On January 5, 1977, the Brochus "closed" on the contract and took possession of the house built by Mark III.

Three years later, in August of 1980, the Brochus filed a two-count complaint against Mark III alleging that the purchase agreement had been breached by Mark III's failure to test the soil to verify its suitability for building on, that the soil was unsuitable and the home had been sinking since the Brochus took possession, causing damage to the home and a reduction in its value. In count I the Brochus urged that Mark III had breached its contract to construct the improvements in a good and workmanlike fashion. Count II alleged the Brochus had relied on the contractual representations relative to the soil tests Mark III would perform, and they purchased the property in reliance on these representations. They contended they suffered damages as a result of the false representations of defendant, and only became aware of their loss due to the "rapid settlement of the building on unstable soils." Mark III contacted its attorney, Herbert I. Rothbart, and sent the complaint to its insurance carrier, Western.

By letter dated October 28, 1980, Western initially agreed to accept defense of the claim and told its attorney that there was coverage under the products and completed operations schedules. A copy of the letter was sent to Bjerga. Western's attorney, Sullivan, then advised Bjerga in a letter sent about two weeks later, that the defense of the claim against Bjerga was undertaken with a full reservation of Western's rights. The reservations, he stated, were based on exclusions (n) and (o) of the policy, which are discussed below. Western's attorney then assumed control of the defense of the case until October 20, 1981, when Western filed its complaint for declaratory judgment requesting that the court declare the policy issued to Bjerga did not apply to the claim brought by the Brochus.

The Brochus filed a motion for summary judgment, which was joined in by Mark III. They alleged that Western had failed to estab-

lish a genuine issue of material fact. Among other matters in the motion they alleged the exclusions (n) and (o) were unintelligible and inapplicable for reasons set forth in an accompanying memorandum of law. The trial court granted the motions. The trial court agreed with the Brochus' analysis and determined that the insurance contract should be read so as to include coverage of the instant occurrence. It found Western had waived its opportunity to assert a policy defense. Thus, it held Western was required to defend Mark III and upon a finding of liability it would be required to indemnify Mark III for damages established by the Brochus.

■ The "Comprehensive General Liability Insurance Policy" in issue contains 24 pages of insuring agreements, amendments, endorsements, schedules and definitions. It is a complex document. While the policy is far from a model of clear English prose, it is not ambiguous. Our review of the policy issued by Western, together with consideration of the case law which has construed similar policies, leads us to conclude that the type of property damage sustained in the instant case was excluded from coverage. The type of insurance Mark III purchased covered damage or injury to property or person of third parties injured by Mark III's product. The policy does not cover damage to Mark III's product.

Western asserts that an analysis of the policy it sold to Mark III shows that the exclusions (n) and (o) are clearly applicable to the "occurrence" Mark III seeks to defend against, and be indemnified for, if liability is found. The coverage portion of the policy provided:

"I. COVERAGE A - BODILY INJURY LIABILITY
COVERAGE B - PROPERTY DAMAGE LIABILITY
    The Western will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. *bodily injury* or
B. *property damage*
to which this insurance applies, caused by an *occurrence*, and The Western shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but The Western shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of The Western's liability has been exhausted by payment of judgments or settlements."

The exclusion section states the policy does not apply:

"(n) to *property damage* to the *named insured's products* or any part of such products;

(o) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or *out of materials,* parts or equipment furnished in connection therewith; \*\*\*."

Western asserts that the policy does not extend to every claim for damages which may be asserted against Mark III, and that it is not enough the claim is within the general terms of the agreement. The claim must also not be excluded from coverage by the policy. (*Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 124, 294 N.E.2d 7.) On appeal, Western assumes *arguendo* that the property damages suffered by the Brochus were caused by an occurrence so as to be encompassed within the protection of the policy, unless specifically excluded. However, because the damage was excluded under exclusions (n) and (o) quoted above, Western urges the policy provides no coverage for the claim brought by the Brochus.

The Brochus' complaint seeks damages from Mark III for its breach of an express warranty that the home be built in a good and workmanlike condition. They allege that Mark III failed to verify soil bearing pressure as required by the contract. As a result, they contend, the house is sinking; and this has caused the foundation to crack and has created a situation where doors, frames, interior fixtures, plumbing, gas leaks and beams all need repair.

Clearly the Brochus' complaint seeks damages for property damage to the house built by Mark III. If the house is considered a product of Mark III, then exclusion (n) applies. "Product" is defined in the policy as "goods or products manufactured, sold, handled or distributed by the named insured \*\*\*." If the damage was to work performed by Mark III, then exclusion (o) applies. We believe the exclusions apply to the Brochus' claim.

Virtually identical provisions for coverage and exclusion were discussed by this court in *Consumers Construction Co. v. American Motorists Insurance Co.* (1969), 118 Ill. App. 2d 441, 254 N.E.2d 265, where a general contractor filed a declaratory judgment action against the insurer which had issued a general liability insurance policy to him. The contractor, who had constructed an elementary school and had been charged with failing to follow plans and failing to construct the school in a workmanlike manner, argued the policy of insurance should be construed to cover the type of claims brought against

him. The trial court found that the insurance policy provided neither property damage coverage under the facts alleged in the complaint nor that a defense be provided for the contractor.

The trial court was affirmed on appeal. The coverage provision of the policy in that case provided:

" 'Coverage B - Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

'Exclusions - This policy does not apply: \*\*\*

(h) Under Coverage B, to injury to or destruction of \*\*\* (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, *or work completed by or for the named insured, out of which the accident arises; \*\*\*.' "* (Emphasis added.) (*Consumers Construction Co. v. American Motorists Insurance Co.* (1969), 118 Ill. App. 2d 441, 444-45, 254 N.E.2d 265, 267.)

Thus the court in *Consumers* was presented, as we are in the case at bar, with the question of whether the named insured's product, or the work completed or performed by the insured, is excluded from coverage under the policy. Both the policy language and factual basis for the *Consumers* case are quite similar to those presented in the case at bar. The *Consumers* court held that the claims presented arose out of the work completed by the insured for the damage caused by the insured's work. Because no claim was made for damage to the property of another, coverage was excluded under the policy. (118 Ill. App. 2d 441, 447, 254 N.E.2d 265, 268.) The *Consumers* court noted that the exact question presented had not previously been addressed by an Illinois court. Thus it found the reasoning of cases from other jurisdictions was persuasive.

In one such case, *Liberty Building Co. v. Royal Indemnity Co.* (1959), 177 Cal. App. 2d 583, 346 P.2d 444, 2 Cal Rptr. 329, a building contractor had constructed a number of stucco houses which developed defects after they were sold. The defects were caused by an improper mixture which allowed water to absorb into the stucco. The contractor's insurance company refused coverage, and the contractor sued the insurer to recover the amount he had paid in settlement. The trial court dismissed the suit and the dismissal was affirmed on review. The policy provisions in *Liberty* were almost word for word the same as those in *Consumers Construction Co. v. American Motorists Insurance Co.* (1969), 118 Ill. App. 2d 441, 254 N.E.2d 265, and the case at bar. In discussing the exclusions and coverage afforded by the

policy the *Consumers* court quoted from the California case, noting that damage sustained by any "goods or products *** or premises alienated *** or work completed *** *out of which the accident arises*" was not recoverable under the policy. (118 Ill. App. 2d 441, 446, 254 N.E.2d 265, 268.) However, the court clarified the coverage question when it stated that "if the accident also caused damage to some *other* property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded." (118 Ill. App. 2d 441, 446, 254 N.E.2d 265, 268.) An example given was that if because of an improper mix of stucco and water, water became absorbed into the stucco and a piece fell off and injured a child, then the injury to the child would not be excluded, but the replacement cost of the stucco could be excluded. From this it becomes clear that a policy such as that in issue in the case at bar will not cover repairs or replacements to the insured's work or product which proved defective and caused an accident. However, damage to other property or personal injury is not excluded.

Similar exclusions from coverage of a liability insurance policy were discussed in *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 294 N.E.2d 7, where claims were brought against contractors and subcontractors who had built the John Hancock Center. Hartford, who had issued a liability insurance policy, brought a declaratory judgment action, alleging, *inter alia*, that exclusionary clauses, which are substantially the same as those presented in the case at bar, should be given effect so as to deny coverage. The court noted that the exclusions, when read with the insuring agreement, precluded coverage for injury to the John Hancock Center, but provided coverage for injury to or destruction of some other property. (10 Ill. App. 3d 115, 126, 294 N.E.2d 7, 15.) The court stated that the policy issued was a liability policy, not one that insured the property or work of the insured, and cited *Consumers Construction Co. v. American Motorists Insurance Co.* (1969), 118 Ill. App. 2d 441, 254 N.E.2d 265, with approval.

More recently, an insurance policy with identical exclusions (n) and (o) was viewed as clearly excluding damages to the insured's product when the damages were caused by deficiencies within that product. (*Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 691, 414 N.E.2d 1218, 1221.) The *Sentry* court noted that despite the principle that ambiguities in a contract should be construed in favor of the insured (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 424, 401 N.E.2d 539), the application of exclu-

sions (n) and (o) was bereft of ambiguity. Therefore, it held, when the terms of the policy are clear, the insurance contract will be enforced as written. Thus Sentry had no liability to cover the claimed loss and no duty to defend its policy holder. The *Sentry* case, and the other cases previously discussed here, have construed policies such as that written by Western so as to exclude the claims for damages to the insured's product.

■ The Brochus also claim that the policy provided for "completed operations" and "products hazard" coverage. Bjerga paid an additional premium for that coverage after he entered into the contract to complete the home. This additional coverage, they contend, should cover a claim such as theirs. We do not agree with this contention. The Brochus contend that exclusions (n) and (o) are in conflict with the supplemental hazards Bjerga insured against, and that this conflict creates an ambiguity in the contract. (*Maretti v. Midland National Insurance Co.* (1963), 42 Ill. App. 2d 17, 24, 190 N.E.2d 597.) However, both the "completed operations hazard" and the "products hazard" are defined in the policy to cover property damage which occurs "away from premises owned by or rented to the named insured." Thus, we believe when this definition is read together with the other relevant policy provisions the contract unambiguously excludes damages to the insured's premises.

Virtually the same contention was made in the *Consumers* case, where the insured, a contractor, argued his purchase of an additional schedule of products-hazard insurance afforded coverage of the final product, the school he had constructed. In that case, the contractor had purchased " 'products - General Contracting - building construction (not prefabricated); Building - N.O.C.' " (*Consumers Construction Co. v. American Motorists Insurance Co.* (1969), 118 Ill. App. 2d 441, 447, 254 N.E.2d 265, 268.) The contractor argued that this additional schedule was in conflict with exclusion (n)(4), quoted previously herein, which excluded "work completed by or for the named insured." The contractor in *Consumers*, as well as the contractor in the case at bar, made the contention that the conflict between the product-hazard coverage and the exclusion of work completed created an ambiguity that required the policy be construed in favor of the insured. The *Consumers* court rejected this contention. It reasoned that where the claim arises out of work completed by the insured, for damages caused by its work, the policy will not protect the insured. Quoting from a case decided by the Supreme Court of Appeals of West Virginia (*McGann v. Hobbs Lumber Co.* (1965), 150 W. Va. 364, 368, 145 S.E.2d 476, 479), the court observed that the coverage provided

by the policy was subject to the exclusions. The court stated:

"'*** As noted above, Exclusion (j)(4) clearly provides that this policy does not apply to premises alienated by the insured or to work completed by the insured out of which the accident arises. It is undisputed that the damaged premises here involved was that alienated by the insured and was work completed by the insured out of which the accident arose.'" (*Consumers Construction Co. v. American Motorists Insurance Co.* (1969), 118 Ill. App. 2d 441, 449, 254 N.E.2d 265, 269.)

Because the coverage and exclusions of *Consumers* and *McGann* are so similar to the policy issued by Western, we believe the same result must be reached in the case at bar; the damages which arose from the insured's product are not covered under the Western policy.

The final issue presented by Western concerns the question of whether Western, by assuming control of the case on behalf of the insured, Mark III, waived the right to assert a policy defense. The trial court ruled that Western had stated by letter dated October 28, 1980, that there was coverage and a defense would be given Mark III. Two weeks later on November 12, 1980, Western's attorney advised Mark III that the defense provided for him was subject to Western's reservation of rights. The trial court held that this assertion of coverage by Western, together with the undertaking of the defense over the course of the next year, provided the basis for its ruling that Western had waived its opportunity to assert a policy defense. The court also ruled that the policy was ambiguous and should be construed in favor of the insured. We disagree.

As previously discussed, the motion for summary judgment in the case at bar was initially brought by the Brochus. It was subsequently joined in by Mark III. The motion alleged the details of the Brochus' claim against Mark III and the existence of Mark III's insurance with Western. They urged that the exclusion provisions of the policy were unintelligible and inapplicable because Mark III had purchased additional coverage for carpentry and independent contractor coverage. Brochus' memorandum in support of their motion alleged that the parties intended the policy would cover Mark III's construction business. Mark III also filed a memorandum in support of their motion. It alleged that the claims manager for Western had stated coverage and a defense would be provided; that Western undertook acts to affirm and ratify the coverage and that Western should have tendered the defense to Mark III before it undertook ratifying conduct. Because Western offered coverage and a defense, Mark III contended Western had waived its right to deny coverage. In support of this contention

the memo referred to letters from Western's attorney which reflected his activities as attorney on the case. Mark III contended that the existence of this correspondence manifested a showing that Western ratified coverage and their undertaking of the defense waived their right to deny coverage.

■ We believe the trial court erred in ruling that Western had waived its opportunity to assert a policy defense. Although in the letter dated October 28, 1980, Western's claims manager stated that there did not seem to be any question concerning coverage, this statement was retracted by Western's attorney, Sullivan. The letter of November 12, 1980, to Mark III's attorney explained in some detail that Western was assuming the defense of the claim only, that the defense was based on a reservation of rights and without any admission of liability. The reservations were based on exclusions (n) and (o) of the policy, which, the letter pointed out, excluded coverage under the policy. In light of this we do not believe there is any dispute as to whether Western waived its right to assert a policy defense. Further, we see no conflict of interest arising from the fact that Sullivan sent Bjerga the reservation of rights letter.

■ By contrast, we do believe that a factual dispute remains as to whether Western may be estopped from asserting a defense of noncoverage. The estoppel question, we believe, is separate from the waiver question, though the two issues are frequently intertwined and confused. We believe the parties in the instant case were urging that Western's conduct in assuming control of the defense resulted in prejudice or detriment to Mark III. While this has not been shown to have occurred, it does remain a factual dispute between the parties. Therefore, it should not have been resolved by a motion for summary judgment.

The leading case in this area is *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24. This case held that an insurer may be estopped from asserting a defense of noncoverage if it undertakes the defense of an action against the insured, inducing the insured to surrender control, and if the undertaking results in some prejudice to the insured. (64 Ill. 2d 187, 195, 355 N.E.2d 24, 29; *Gibraltar Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 263 N.E.2d 823.) However, prejudice will not be presumed from the mere entry of an appearance and assumption of the defense. *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 196, 355 N.E.2d 24, 29.

Further, mere delay in disclaiming liability is not enough, unless the delay results in prejudice. (*Old Mutual Casualty Co. v. Clark* (1977), 53 Ill. App. 3d 274, 279, 368 N.E.2d 702, 705.) There is no

presumption of prejudice to the insured, and the prejudice or detriment to the insured is a matter of fact (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 196, 355 N.E.2d 24, 29) that must be alleged and proven by "clear, concise, and unequivocal evidence." *Royal Globe Insurance Co. v. Tutt* (1982), 108 Ill. App. 3d 69, 72, 438 N.E.2d 943, 946.

It is clear that Western undertook, for the period of approximately one year, the defense of the claim against Mark III. However, it is equally clear that prejudice will not be presumed by the insurer merely assuming a defense on behalf of an insured. (*Old Mutual Casualty Co. v. Clark* (1977), 53 Ill. App. 3d 274, 279, 368 N.E.2d 702, 705.) The record shows that Western initially accepted coverage on October 28, 1980, and subsequently advised Mark III on November 12, 1980, that it was defending under a reservation of rights. What the record fails to show is how Mark III was prejudiced. Although Western delayed, for a period of a year, its assertion of a defense of noncoverage, the existence of delay is not sufficient to show an estoppel unless the delay results in prejudice. (*Old Mutual Casualty Co. v. Clark* (1977), 53 Ill. App. 3d 274, 279, 368 N.E.2d 702, 705.) In the case at bar there has been no opportunity for Mark III to show how, or if, it was prejudiced by Western having assumed the defense. Thus, we conclude that the parties have not yet shown the clear, concise and unequivocal evidence necessary to show actual prejudice. A factual dispute does remain. (*Royal Globe Insurance Co. v. Tutt* (1982), 108 Ill. App. 3d 69, 72, 438 N.E.2d 943.) Absent a showing of prejudice Western cannot be said to be estopped from raising its defense of noncoverage. (*King v. Aetna Insurance Co.* (1961), 31 Ill. App. 2d 462, 176 N.E.2d 689.) The question of estoppel, and more particularly whether there was prejudice to the defendants, was a genuine issue of fact, which precludes the entry of summary judgment. (*Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 391, 349 N.E.2d 1, 2; *Ciaccio v. North River Insurance Co.* (1974), 17 Ill. App. 3d 940, 942-43, 308 N.E.2d 860.) Therefore, this cause must be remanded for determination of this issue.

Western urges that the trial court erred in ruling that it had waived its lack of coverage. Western contends that where there is no coverage under the provisions of a policy, none may be imposed by virtue of waiver. This particular point has not been directly ruled on by the courts in Illinois. In the case at bar we do not address this contention because we have found that the policy does not provide coverage and Western did not waive its right to assert a policy defense. However, questions of estoppel remain to be considered by the trial

court. From the record it appears there is a factual dispute concerning the estoppel issue. It is possible that, regardless of Western's assertion of its reservation of rights, its conduct in representing Mark III resulted in prejudice or detriment to the insured which would estop Western from denying coverage. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 196, 355 N.E.2d 24, 29; *Royal Globe Insurance Co. v. Tutt* (1982), 108 Ill. App. 3d 69, 72, 438 N.E.2d 943.) Such a showing of prejudice would also require Western to furnish Mark III a defense or reimburse it for the reasonable cost of defending the action. *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 199, 355 N.E.2d 24, 31.

For the reasons stated, the trial court's decision that Western had waived its opportunity to assert a policy defense and that there was no policy coverage is in error. The trial court's finding that Western was obliged to defend Mark III and indemnify for damages, if any are found, is error. Because questions of fact remain and the estoppel issue is yet to be resolved, the order granting summary judgment is reversed.

Reversed in part and remanded.

REINHARD and VAN DEUSEN, JJ., concur.