LOUIS FAULKNER, d/b/a Faulkner Builders, Plaintiff-Appellee and Cross-Appellant, v. UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellant and Cross-Appellee.

Second District   No. 2—86—0657

Opinion filed May 12, 1987.—Supplemental opinion filed on denial of rehearing August 13, 1987.

Joseph E. Heaton, Jr., and Thomas L. Sanders, both of Ward, Murray, Pace & Johnson, of Sterling, for appellant.

Donald J. Miller, of Forreston, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendant, United States Fidelity & Guaranty Company (USF&G), appeals from a summary judgment entered against it in favor of plaintiff, Louis Faulkner, d/b/a Faulkner Builders. The court held that defendant had a duty to defend plaintiff in a counterclaim brought against plaintiff by the Rock Falls Eagle Club (Eagle Club). At a subsequent hearing the court awarded plaintiff $28,928.97 in damages for fees and costs incurred by plaintiff in defending the counterclaim brought by the Eagle Club and in prosecuting the suit against defendant. This appeal ensued.

In this court defendant raises several contentions of error: (1) that the trial court erred in finding that defendant had a duty to defend plaintiff in the underlying suit; (2) that the trial court erred in finding that the retained limit under the applicable insurance policy was $1,000 rather than $10,000; (3) that the trial court erred in awarding plaintiff attorney fees incurred by him in prosecuting the instant action; and (4) that the trial court erred in the amount of attorney fees, interest on the sum plaintiff borrowed to settle the underlying suit, and costs incurred by plaintiff in defending the underlying suit.

Plaintiff cross-appeals contending: (1) that the trial court erred in failing to award plaintiff attorney fees in the underlying lawsuit, and (2) that plaintiff is entitled to attorney fees and costs for defending this appeal.

In 1980 plaintiff Louis Faulkner, d/b/a Faulkner Builders, brought suit against the Eagle Club for moneys owed plaintiff for a building he had constructed for the Eagle Club pursuant to a construction contract. The Eagle Club filed a counterclaim against plaintiff, alleging that he had negligently failed to perform the construction in a "good, workmanlike fashion." Plaintiff forwarded a copy of the counterclaim to its insurance agent seeking the defendant's defense of the counterclaim. Defendant declined to defend plaintiff on the basis of two exclusions contained in an endorsement to plaintiff's comprehensive general liability policy (CGLP). That endorsement provided:

*"EXCLUSIONS*
This insurance does not apply:

\* \* \*

[1] to property damage to the named insured's products arising out of such products or any part of such products;

\* \* \*

[n] to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

As a result, plaintiff proceeded to trial with his own legal counsel in the Eagle Club action. In July 1982, judgment was entered against plaintiff and in favor of the Eagle Club in the sum of $21,618.56. That amount was later modified by the Appellate Court for the Third District to $20,618.56.

Subsequently, in June 1983, plaintiff brought the instant action against defendant, contending defendant breached its duty to defend under the terms of the CGLP. Plaintiff sought judgment in the amount of $28,710.87, the sum of the aforementioned judgment against plaintiff plus interest thereon and attorney fees and costs incurred by plaintiff in the Eagle Club litigation. Defendant filed a motion for summary judgment which the court granted on the issue of liability based on the two policy exclusions set out above. The court reversed the question of attorney fees expended by plaintiff for further determination, as the question constituted a question of fact.

Following the court's granting of defendant's summary judgment motion, plaintiff filed a second amended complaint in February 1985, seeking recovery under an excess indemnity policy also issued by defendant to plaintiff and in force at the time the Eagle Club brought its suit against plaintiff. In this complaint plaintiff sought judgment in the amount of $28,375.18, a sum representing a loan incurred by plaintiff in settling the underlying Eagle Club suit, interest accrued on the loan, and attorney fees and costs incurred in the original action with the Eagle Club as well as attorney fees in prosecuting the action against defendant. Plaintiff also sought an additional undetermined amount for attorney fees pursuant to section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 767).

The excess indemnity policy, entitled "Comprehensive Excess Indemnity Policy" (CEIP) consisted of five sections as well as a personal excess indemnity coverage endorsement. Plaintiff relied on the following portion of this endorsement to contend that defendant had an obligation to defend plaintiff in the Eagle Club suit:

"I. COVERAGE A - PERSONAL LIABILITY. The Company

will indemnify the Insured for ultimate net loss which the Insured shall become legally obligated to pay because of personal injury or property damage.

\* \* \*

II. LIMITS OF LIABILITY

Coverage A - Personal Liability. The Company shall be liable only for the ultimate net loss in excess of either:

(1) the total of the applicable limits of all underlying insurance, or

(2) the retained limit stated in Item 4 of the Schedule if all underlying insurance is inapplicable to the occurrence, up to a sum not exceeding the amount stated in Item 5 of the Schedule as the result of any one occurrence."

Both plaintiff and defendant filed motions for summary judgment on the issue of whether the CEIP provided plaintiff coverage which required defendant to defend plaintiff on the counterclaim by the Eagle Club. At the hearing on the motions, defendant relied on specific exclusions within the CEIP to show that any property arising out of the named insured's products or for any property damage to work performed by or on behalf of the named insured arising out of such work was precluded from coverage by defendant. These exclusions will be presented below with the discussion of the issues. Defendant also relied on the personal excess indemnity coverage endorsement relating to the business pursuits of an insured to show that defendant bore no liability for property which was the subject of the counterclaim.

The court denied defendant's summary judgment motion finding that while defendant may or may not have had any liability to pay the claim brought against plaintiff by the Eagle Club, defendant's duty to defend extended beyond its duty to pay the claim, and, therefore, defendant should have defended plaintiff under a reservation of rights or sought a declaratory judgment.

Subsequently, a hearing was held to determine attorney fees and court costs incurred by plaintiff in defending the Eagle Club action and in prosecuting the instant action against defendant. Following that hearing the trial court entered judgment against defendant, awarding plaintiff $30,928.97 in damages: $15,000 for settlement of the underlying lawsuit, $1,971.48 in costs for the underlying suit, $5,123.14 in interest on the $15,000 note, and $8,834.35 in attorney fees and court costs for prosecuting the instant case. This figure was later reduced to $28,928.97 pursuant to defendant's post-trial motion, which was denied in all other respects.

Defendant filed a timely notice of appeal, and plaintiff filed a cross-appeal.

We address only defendant's first contention as our disposition of it obviates any need to address defendant's other issues.

Defendant maintains that the trial court erred in finding that defendant had the duty to defend plaintiff in the counterclaim filed by the Eagle Club. Specifically, defendant argues that the comprehensive excess indemnity policy (CEIP), which is the subject of this appeal, contains specific exclusions to coverage for any property damage, arising out of the plaintiff's products or for any property damage to work performed by or on behalf of plaintiff arising out of such work or portion thereof and therefore provided neither coverage nor any duty to defend plaintiff in the underlying lawsuit.

Section 4, the exclusions portion of the CEIP, states:

"This policy does not apply:

* * *

4.7 to property damage to:

* * *

(c) the Named Insured's products arising out of such products or any part of such products;

* * *

(e) work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

We have already dealt with identical exclusions in *Western Casualty & Surety Co. v. Brochu* (1984), 122 Ill. App. 3d 125, 460 N.E.2d 832, *aff'd* (1985), 105 Ill. 2d 486, 475 N.E.2d 872. In *Brochu*, the insured, a contractor, had agreed to construct a home in a "good and workmanlike manner." (122 Ill. App. 3d 125, 127, 460 N.E.2d 832.) Three years after the completion of the house, the purchasers sued the insured, alleging property damage to the house when it began sinking into unstable soil, which the insured failed to test as required under the purchase agreement. The contractor forwarded the purchaser's complaint to its insurance carrier, Western.

Western initially agreed to accept defense of the claim, but two weeks later Western's attorney informed the insured that defense of the claim against insured was undertaken with full reservation of Western's rights. The reservations were based on exclusions (n) and (o) of the insured's policy with Western, which provided that the policy did not apply:

"(n) to property damage to the named insured's products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

Western's attorney then assumed control of the defense of the case but subsequently filed a complaint for declaratory judgment requesting the court declare the policy issued to insured did not apply to the claim brought by the purchasers. The purchasers filed a motion for summary judgment which was joined in by the insured. The trial court granted the motion, and Western appealed.

This court, relying heavily on *Consumer Construction Co. v. American Motorists Insurance Co.* (1969), 118 Ill. App. 2d 441, 254 N.E.2d 265, held that while the policy was complex, it was not ambiguous and that although property damage to the property of third parties was not excluded from coverage, damage to the product manufactured by the insured or to work performed by the insured was excluded. (*Western Casualty & Surety Co. v. Brochu* (1984), 122 Ill. App. 3d 125, 130-31, 460 N.E.2d 832.) Our supreme court affirmed this decision, finding that the home purchasers sought compensation solely for property damage to the house built by the insured and that based on exclusions (n) and (o) of the policy in question, such a property damage claim was not covered. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 498, 475 N.E.2d 872.

Identical or nearly identical exclusions to those in the *Brochu* case and the instant case have been interpreted in a similar manner. (See, *e.g.*, *Qualls v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 831, 833-35, 462 N.E.2d 1288; *Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 691, 414 N.E.2d 1218.) The Appellate Court for the Fifth District, however, in *Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694, 474 N.E.2d 953, a case involving the same defendant as here, has recently interpreted two exclusions identical to those in the instant case and found against the insurer.

In *Trovillion* the insured, general contractors, were sued because of their failure to erect a house in a good and workmanlike manner. The purchasers of the house alleged numerous defects resulting from faulty construction of the house, including a sagging floor in the bedroom which had buckled and become detached in some places from the walls, cracked walls, and a cracked vinyl kitchen floor. All of the defects were blamed on faulty construction, inferior materials, and failure to supply contracted-for items. The insurer, USF&G, under-

took the insured's defense under a reservation of rights but later withdrew its defense, citing policy exclusions identical to the exclusions in question in the instant case.

In reaching its decision, the Appellate Court for the Fifth District discussed the *Brochu* case, pointing out how strikingly similar *Brochu* was to the case before it because the damage alleged to have occurred in *Trovillion* also appeared to be damage to the insured's product, the house, and its several parts and materials. Nevertheless, the court found *Brochu* procedurally distinguishable in a significant respect because in *Brochu* it was the insurer who sought a declaration of its rights when potentiality of coverage was questioned, whereas in *Trovillion* it was the insured who had to bring an action for declaratory judgment to determine if potentiality of coverage existed. (*Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694, 698, 474 N.E.2d 953.) The appellate court determined that damages of the type asserted under the broad allegations of the home purchasers' complaint could be covered. The court concluded that as an insurer is obliged to defend where a complaint alleges facts within, or potentially within, policy coverage, USF&G should have defended the insured in the underlying suit. 130 Ill. App. 3d 694, 700, 474 N.E.2d 953.

■■ Relying on *Trovillion*, plaintiff in the instant case argues that in cases in which an insurer believes a policy does not provide coverage, it must either secure a declaratory judgment as to its rights and obligations before or pending trial of the original action or defend under a reservation of rights. (*Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694, 700, 474 N.E.2d 953.) However, what plaintiff omits to point out is that an insurer is only required to select one of these options if a policy exclusion is not absolutely clear on the face of the complaint. Here, we believe it is clear that the allegations of the Eagle Club counterclaim provide no basis for coverage under exclusions (c) and (e) of the policy in question.

■■ In its counterclaim the Eagle Club alleged that plaintiff negligently failed to perform the construction of a building for the Eagle Club in a good workmanlike manner, in that plaintiff failed to properly install the concrete floor of the main structure so that large cracks developed in the floor, failed to properly build walls, failed to properly excavate the basement as required in the contract specifications, failed to properly install a post support in the first floor men's restroom of the structure, thereby causing a defect in the structural design of the building and creating a nuisance and hazard, and per-

formed other construction in a poor, unworkmanlike, and defective manner. It appears clear to us from these allegations that the Eagle Club sought compensation solely for property damage to the building constructed by plaintiff, *i.e.*, damages for economic losses resulting from plaintiff's poor workmanship. Those losses are excluded from coverage by the policy, and, therefore, defendant had no duty to defend plaintiff on the counterclaim.

We find no merit to plaintiff's contention that defendant's original decision to deny plaintiff coverage was based on exclusions contained within the comprehensive general liability policy (CGLP) rather than on the exclusions in the CEIP and that, therefore, defendant is estopped from now disputing coverage under the CEIP. By finding that defendant was not liable for the damages resulting from plaintiff's faulty workmanship on the Eagle Club's building, the court established the appropriateness of defendant's denial of coverage based on the CGLP. That defendant did not also deny coverage on the basis of exclusions within the CEIP is immaterial, as its denial under the applicable exclusions of the CGLP constituted a sufficient basis of denial. Once the trial court determined defendant bore no liability for the Eagle Club counterclaim, it was the plaintiff who then introduced the CEIP into the instant action by filing a second amended complaint seeking coverage under this latter policy.

In response to plaintiff's second amended complaint defendant then showed, through affirmative defenses in its answer to the complaint and through its motion for summary judgment, how coverage was likewise denied under exclusions within the CEIP, which exclusions were identical to those used to deny plaintiff coverage under the CGLP. The trial court in its letter of opinion never made a conclusive finding as to whether or not defendant bore any liability under the CEIP to pay the claim brought against plaintiff in the underlying suit. Rather, as it had previously found after hearing arguments and examining the pleadings, exhibits, and motions for summary judgment regarding the CGLP, the court again found that defendant was obliged to defend plaintiff under a reservation of rights or the filing of a declaratory judgment action to determine its rights and obligations. We note, however, that in its final written order the court awarded plaintiff $15,000 for settlement of the underlying lawsuit, indicating that the court must have later concluded that defendant was liable for coverage under the CEIP. Nevertheless, our examination of both policies reveals that defendant was not liable under either policy for the claim brought against plaintiff by the Eagle Club and, therefore, bore no duty to defend plaintiff.

Because of our disposition of this issue it is unnecessary to address the remainder of defendant's issues or the issues raised by plaintiff in his cross-appeal. As we find defendant had no duty to defend, it logically follows that defendant bears no responsibility for attorney fees incurred by plaintiff in prosecuting the instant action, the underlying action, or this appeal; the $15,000 loan plaintiff incurred for settlement of the underlying lawsuit; the $5,123.14 interest on the $15,000 note; or the $971.38 for costs and expenses incurred by plaintiff in defending the underlying suit.

Accordingly, we reverse the judgment of the circuit court of Ogle County.

Reversed.

LINDBERG, P.J., and WOODWARD, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE HOPF delivered the opinion of the court:

■ In his petition for rehearing and application for certificate of importance, the plaintiff asserts that this court overlooked the potentiality for coverage afforded by the CEIP. We note that with the exception of *Illinois Farmers Insurance Co. v. Preston* (1987), 153 Ill. App. 3d 644, 505 N.E.2d 1343, the authorities relied upon by plaintiff for this assertion were not argued or cited in either plaintiff's brief or reply brief. As these authorities were available to plaintiff at the time his briefs were filed, we refuse to consider them now. Moreover, this court's opinion in *Preston* would not alter the result we have reached here, because in *Preston*, as in the case before us, we emphasized that an insurer's duty to defend arises *only if* there are allegations set forth in the complaint that are in, or potentially within, coverage. (153 Ill. App. 3d 644, 649, 505 N.E.2d 1343.) As stated in the instant opinion, plaintiff's faulty workmanship was not within policy coverage.

■ Plaintiff's petition for rehearing appears to deal more with this court's treatment of the issue considered rather than with its ultimate decision on the merits of the appeal. (See *Schlenz v. Castle* (1985), 132 Ill. App. 3d 993, 1018, 477 N.E.2d 697.) It is the court's decision that is the subject of reconsideration on a petition for rehearing rather than the language or reasoning employed therein. (132 Ill. App. 3d 993, 1018, 477 N.E.2d 697.) Although plaintiff may not agree with the reasoning we used to determine defendant was

not liable for coverage under the CEIP, the plaintiff's potentiality for coverage afforded by the entire policy was considered.

As we concluded in our opinion, plaintiff was denied coverage under exclusions (c) and (e) of section 4.7 of the exclusions portion of the CEIP. Additionally, exclusion 5 of the personal excess indemnity coverage endorsement of the policy also precluded coverage. Despite the fact that we did not discuss the personal excess indemnity coverage endorsement contained in the CEIP in reaching our decision that no coverage was provided by the CEIP, we did examine the policy and take that endorsement, as well as other provisions of the policy, into consideration in construing the policy. We are mindful of the general contract rule that an insurance contract should be viewed as a whole to determine the intention of the parties to the contract and the purpose they sought to accomplish. *Standard Mutual Insurance Co. v. Sentry Insurance of Illinois, Inc.* (1986), 146 Ill. App. 3d 905, 910, 497 N.E.2d 476.

Exclusion 5 of the personal excess indemnity coverage endorsement relates specifically to the business pursuits of an insured setting forth when the defendant is not legally obligated to indemnify plaintiff for losses incurred because of property damage. Exclusion 5 provides:

"This endorsement does not apply:
As respects Coverage A;
* * *
5. to any business pursuits or business property of an Insured unless insurance is provided therefor by an underlying policy described in Item 7 of the Schedule and then not for broader coverage, excepting limits of liability, than is provided by such insurance; * * *."

Item 7 of the policy's schedule of underlying insurance lists "Eligible Business Property Liability." The eligible business property is defined in the business property endorsement of the policy. That endorsement provides:

"BUSINESS PROPERTY
It is agreed that with respect to exclusion 5, for the purpose of this insurance, the underlying insurance described in Item 7 of the declarations applies only to the following properties:
305-307 1st Avenue. Forreston, IL
108 Oak Street, Forreston, IL"

The parties do not dispute that the damage which was the subject of the original counterclaim occurred at the Rock Falls Eagle Club, located at 321 West Second, Rock Falls, Illinois. Under the

plain language of exclusion 5, cited above, the damages at the Eagle Club resulting from plaintiff's pursuit of his normal business, *i.e.*, construction work, were excepted from coverage. Where the provisions of an insurance policy are clear and unambiguous, as is the case here, it is the duty of the court to enforce them according to their plain meaning. (*Uhwat v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 295, 303, 465 N.E.2d 964.) Accordingly, we adhere to our original opinion and deny plaintiff's petition for rehearing.

■■ Alternatively, the plaintiff asks this court to issue a certificate of importance, pursuant to Supreme Court Rule 316 (87 Ill. 2d R. 316), based upon "the diametrically opposed opinions" in the instant case and in *Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694, 474 N.E.2d 953. As we pointed out in our opinion above, the court in *Trovillion* determined that the insurer was obliged to defend because the plaintiff's complaint in that case alleged facts which could be potentially covered by the policy in question. The ultimate result we reach in the instant case is opposite from that reached in *Trovillion* because we find the allegations in the instant complaint sought damages strictly for economic losses resulting from plaintiff's poor workmanship. Clearly, such losses were excluded from coverage under the CEIP. Thus, the fact that we have reached an opposite conclusion, based upon the allegations in the complaint before us, from that of the *Trovillion* court does not justify the issuance of a certificate of importance, and we therefore deny plaintiff's request.

Petition for rehearing denied.

Petition for certificate of importance denied.

LINDBERG, P.J., and WOODWARD, J., concur.