LARRY G. TROVILLION *et al.*, Plaintiffs-Appellants, v. UNITED STATES FIDELITY AND GUARANTY COMPANY *et al.*, Defendants-Appellees.

Fifth District   No. 5—84—0323

Opinion filed February 15, 1985.

Edwina Warner, of Caldwell, Troutt, Alexander, Quindry & Popit, of Benton, for appellants.

W. A. Armstrong, of Mitchell & Armstrong, of Marion, for appellees.

JUSTICE KARNS delivered the opinion of the court:

This action for declaratory judgment was brought in the circuit court of Franklin County by plaintiffs-insured to determine the rights and duties of the parties under a policy of liability insurance issued by defendant. The trial court held that the defendant, United States Fidelity and Guaranty Company (USF&G), had no duty to defend plaintiffs or to indemnify them for loss because of a judgment entered against them in an action by a third party. Plaintiffs assert on appeal that the complaint filed against them was potentially within the coverage afforded under the policy issued by USF&G and that the insurer

breached its contractual duty to defend and is estopped to deny coverage.

The Trovillions, partners in a carpentry and construction business, built a house as general contractors for James and Melissa Williamson. The Williamsons sued the Trovillions and obtained a judgment for breach of contract because of their failure to erect the house in a good and workmanlike manner. Prior to that trial, the Trovillions filed this action, seeking a declaration that USF&G must defend the Williamson suit and indemnify them for any adverse judgment rendered against them. USF&G had theretofore undertaken their defense under a reservation of rights but later withdrew its defense, citing several policy exclusions. The Williamson suit meanwhile proceeded to trial and was defended unsuccessfully by counsel retained by the Trovillions. The judgment was satisfied, and in their instant amended complaint plaintiffs sought to recover that amount plus attorney fees and costs expended in the defense of that suit.

Two weeks after the original complaint was filed, USF&G wrote to Trovillions indicating its belief that several policy exclusions would be effective to preclude coverage and reserving its rights under the policy pending its investigation. The July 5, 1979, letter stated that "there is serious question as to whether this policy provides coverage" and "[i]n view of the foregoing and for other good and sufficient reasons we have referred the complaint to our defense attorney." USF&G's defense counsel subsequently filed interrogatories, a request to produce and a motion to dismiss the complaint, which motion was granted, resulting in Williamson's amended complaint filed in September 1979.

The parties are in agreement that it has long been established that if an action is commenced against an insured alleging claims potentially within the policy coverage, the insurer must either defend the suit under a reservation of rights or seek a declaratory judgment that the policy affords no coverage. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24; *County of Massac v. United States Fidelity & Guaranty Co.* (1983), 113 Ill. App. 3d 35, 446 N.E.2d 584; *Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 416 N.E.2d 758; *Clemmons v. Travelers Insurance Co.* (1980), 88 Ill. App. 3d 201, 410 N.E.2d 445; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) The trial court concluded that "there is no potential or possible coverage afforded to the Plaintiffs under the policy of insurance with respect to the allegations of the [Williamson's] Amended Complaint."

Count I of the amended complaint filed against the plaintiffs by Williamson was based on breach of contract. The complaint alleged that the Trovillions agreed to construct a specified house in reasonably good and workmanlike manner. The complaint alleged that the Trovillions failed to perform in that the floor sagged because of inadequate support and as a result the floor in the bedroom area buckled and in other places became detached from the walls; that the walls cracked and the vinyl kitchen floor cracked. The complaint further alleged that the mortar and bricks in the exterior walls and the concrete footings cracked because of structural defects and that the roof leaked. Numerous other defects resulting from faulty construction of the house were alleged. All of the complained-of defects were laid to faulty construction, inferior materials and failure to supply contracted-for items. Count II is a repetition of count I but based on negligence. Judgment was entered on behalf of Williamson on count I only.

The Trovillions argue that the amended complaint also alleges property damage to products or materials other than those furnished by them, specifically the vinyl kitchen flooring, or at least that it clearly encompasses a claim for compensatory damages for such other property damage; although no such damage was specifically alleged. Such damage would ostensibly not fall within one of the two exclusions relied on by USF&G.

The coverage clause in pertinent part provides:

"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of *** property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such *** property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, ***."

An occurrence is defined as an accident. USF&G does not contend that the damage to the house did not result from an accident.

The policy exclusions state that the insurance does not apply:

"(n) To property damage to the Named Insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; ***."

In November 1979, USF&G again wrote to the Trovillions and declared, "We are now in position to advise you that your policy does not provide coverage for the allegations made by the Williamsons." Specifically, USF&G cited the policy exclusions (n) and (o), which exclusions provide the basis of the dispute. USF&G withdrew its defense in December.

In accordance with the literal terms of the instant policy and applying the reasoning of the recent and strikingly similar case of *Western Casualty & Surety Co. v. Brochu* (1984), 122 Ill. App. 3d 125, 460 N.E.2d 832, we could conclude, if the procedural posture were the same, that the USF&G general liability policy excludes claims for property damage to the insured's products or to work performed by the insureds arising out of the work or materials furnished by them.

There, the insured, a contractor, agreed to construct a home in a good and workmanlike manner. As here, the insured purchased a general liability policy with "completed operations" coverage. Three years after the house was completed, the owner sued the insured, alleging property damage to the house when it began sinking into unstable soil which the insured failed to test after representing he would do so. The insurer initially agreed to accept the defense and told the insured's attorney that there was coverage under the products and completed operations coverage. Representation was then undertaken under reservation of rights, citing the same exclusions (n) and (o) present here.

The court held that while the policy was not written in clear language, it was not ambiguous and that only property damage to property of third parties was included in the coverage. Damage to the product manufactured by the insured or to work performed by the insured were excluded from coverage. The court noted, however, that damage to "other property" was not excluded.

The damage alleged to have occurred here would appear to be damage to the named insured's product, the house and its several parts and materials. *Western Casualty & Surety Co. v. Brochu* (1984), 122 Ill. App. 3d 125, 460 N.E.2d 832, is, however, procedurally distinguishable in a very significant respect. There it was the insurer who sought a declaration of its rights when potentiality of coverage was questioned.

We have heretofore held that an insurer's duty to defend under a reservation of rights or to seek a declaratory judgment is not satisfied by simply refusing to participate in the litigation and waiting for the insured to institute litigation against the insurer to determine their respective rights and duties. *County of Massac v. United States Fidel-*

*ity & Guaranty Co.* (1983), 113 Ill. App. 3d 35, 446 N.E.2d 584; *Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 416 N.E.2d 758.

The insurer must have been uncertain as to its potential liability under the policy, as it initially undertook the defense of the Williamsons' claim, albeit under a reservation of rights. Under these circumstances, if it later determined that the policy provided no coverage for this occurrence it could not simply withdraw and become a bystander; it would be obliged to seek a declaration of the rights and duties of the parties. Whatever information it may have learned from its independent investigation is of no consequence, as it is the potentiality of coverage from the facts pleaded that determines its duty to defend. (*Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 1070, 416 N.E.2d 758, 763; *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 816, 386 N.E.2d 529, 536; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193, 193 N.E.2d 123, 127.) When an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt.

We are aware that the recent Fourth District case, *Qualls v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 831, 462 N.E.2d 1288, found no liability under facts which may seem like those present here, but we do not find that the disposition there is dispositive, because we perceive that a different issue is presented. There, an action was brought by a dissatisfied homeowner against a carpenter-builder for breach of contract and warranty claiming that the house was poorly constructed. It appears that the reviewing court was convinced that the only damage alleged in the complaint was to work performed by the insured. The court held that a carpenter's general liability insurance policy did not afford coverage for economic loss resulting solely from poor workmanship. The questions of potential property damage claims within the policy coverage, or the duty of the insurer either to defend under reservation of rights or to seek a declaration of rights, were apparently not raised by the insured, as these issues were not discussed at length in the opinion, because the court found the complaint only requested compensation for economic loss, which fell outside the policy coverage.

■ USF&G concedes that it would be required to defend if it were alleged that other tangible property owned by the insured, or another, was damaged in the occurrence. We cannot conclude that such a claim is not potentially asserted under the broad allegations of damage contained in the Williamson complaint. Damages of this type

could be covered. See, *e.g.*, *Western Casualty & Surety Co. v. Brochu* (1984), 122 Ill. App. 3d 125, 460 N.E.2d 832; *Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 370 N.E.2d 1271; *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1977), 46 Ill. App. 3d 936, 361 N.E.2d 589; *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 414 N.E.2d 41.

The threshold that the complaint must satisfy to present a claim of potential coverage is low. (*La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 408 N.E.2d 928.) The complaint must be liberally construed and all doubts resolved in favor of the insured. (*Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 466 N.E.2d 1091; *Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 414 N.E.2d 1218.) The insurer must defend any claim under the pleadings which might possibly fall within the scope of the policy coverage, even though the claim is later determined to have no merit as a matter of law. (*Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 387 N.E.2d 700.) "The insurer can safely and justifiably refuse to defend only when the allegations *clearly* show on their face that the claim is beyond policy coverage [citations], for the duty to defend is broader than the duty to pay [*McFadyen v. North River Insurance Co.* (1965), 62 Ill. App. 2d 164, 209 N.E.2d 833]." (Emphasis in original.) *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928, 933.

We adhere to the rule that in cases in which an insurer believes a policy does not provide coverage, its options are clear. It must either secure a declaratory judgment as to its rights and obligations before or pending trial of the original action or defend under a reservation of rights. *Clemmons v. Travelers Insurance Co.* (1980), 88 Ill. App. 3d 201, 209, 410 N.E.2d 445, 451; *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 387 N.E.2d 700, and cases therein cited.

Having concluded that USF&G breached its contractual duty to defend, it follows that it is estopped from raising noncoverage as a defense to this action. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335, 340; *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 789, 387 N.E.2d 700, 709; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) The measure of damages for such a breach is the amount of the judgment against the insured plus any expenses incurred. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335, 360.) In the instant case the Trovillions are entitled to the amount of

the judgment entered against them plus all costs and attorney fees, which shall include those incurred in defending the underlying suit and in the prosecution and appeal of the instant action.

For all of the above-stated reasons, the judgment of the circuit court of Franklin County is reversed and the cause is remanded for determination of the amount to which plaintiffs are entitled.

Reversed and remanded with directions.

KASSERMAN and HARRISON, JJ., concur.