Otis and Eunice WOLF, Plaintiffs,

v.

**MARYLAND CASUALTY CO., Defendant.**

**Civ. No. 84–3027.**

United States District Court,
S.D. Illinois,
East St. Louis Division.

Aug. 15, 1985.

R. Michael Fisher, Alton, Ill., for plaintiffs.

David M. Duree, O'Fallon, Ill., Leritz & Reinert, St. Louis, Mo., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Before the Court are plaintiffs' Motion for Summary Judgment (Document No. 14) and defendant's Cross-Motion for Summary Judgment (Document No. 27).

The present case flows from an earlier action in Madison County styled *Harold E. Norris v. Wolf,* Case No. 77–LM–167. Norris, who was insured by defendant, sued the plaintiffs for money owed for the construction of a swimming pool in the plaintiffs' backyard. The plaintiffs counterclaimed alleging the pool was defective and caused damage to their property. Judgment was subsequently entered in favor of the plaintiffs for $50,000. The record indicates that the judgment against Norris was obtained from Norris' agreement to not contest to the Plaintiffs' motion for summary judgment and that Norris agreed to this judgment in consideration for plaintiffs' promise to collect the $50,000 *only* from defendant. Defendant initially agreed to defend Norris in the state action under a reservation of rights, however, defendant withdrew the defense when the plaintiffs filed their second-amended counterclaim because in its opinion the second-amended counterclaim did not allege facts within the potential coverage of the policy. Plaintiffs brought an action for the $50,000 against the defendant in state court but took a voluntary dismissal when the state judge denied both parties' motions for summary judgment. The plaintiffs refiled in federal court and both parties have now placed their prior motions before this Court.

Summary judgment is appropriate only where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact." *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984). The Court must view the evidence, and the reasonable inferences to be drawn therefrom, in the light most favorable to the party opposing summary judgment. Where the moving party fails to meet its strict burden of proof, summary judgment cannot be entered even if the opposing party fails to respond to the motion. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215 (7th Cir.1984).

Where the moving party has met its initial burden and the opposing party asserts the existence of a question of fact, the Seventh Circuit has identified two considerations to be used in determining whether summary judgment is proper. The Court must determine whether the non-moving party has established that there is a genuine issue as to that fact.

> To create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial.... A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue.

*Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Furthermore, the disputed fact must be material, that is, it must be outcome-determinative

under the applicable law. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied,* —— U.S. ——, 104 St. 284, 78 L.Ed.2d 262 (1983).

■ The fact that both parties have filed motions for summary judgment does not mean that the Court is bound to decide the case on the motions. The Court could quite conceivably denied both motions if both parties have failed to meet their burden of proving that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2270.

■ The gist of the plaintiffs' argument is that since the allegations in the second-amended counterclaim potentially fell within the purview of the defendant's policy with the Norrises, the defendant breached its duty to defend and is now estopped from arguing no coverage under the policy. The gist of the defendant's argument is that, based on the allegations contained in the second-amended counterclaim, the defendant *clearly* had no duty to defend. Additionally, both parties have fired allegations of fraud at each other. The plaintiffs allege that the defendant coaxed them into amending their counterclaim so as to make the allegations in the second-amended counterclaim fall outside the terms of the policy. The defendant contends that the plaintiffs colluded with the Norrises to defraud the defendant by amending the counterclaim, not forwarding this counterclaim to the defendant, having the Norrises agree not to contest the summary judgment motion, and then agreeing not to execute judgment against the Norrises.

It has long been established that if an action is commenced against an insured alleging claims potentially within the purview of the policy, the insurer must either defend the suit under a reservation of rights or seek before or pending the trial of the original action a declaratory judgment that the policy affords no coverage. *Thornton v. Paul*, 74 Ill.2d 132, 23 Ill.Dec. 541, 384 N.E.2d 335 (1978). The insurer's obligation is not satisfied by simply re-fusing to participate in the litigation and waiting for the insured or the claimant to institute litigation against the insurer to determine their respective rights and duties. *Trovillion v. U.S. Fidelity and Guaranty Co.*, 130 Ill.App.3d 694, 86 Ill. Dec. 39, 42, 474 N.E.2d 953, 956 (1985).

If the insurer fails to defend under reservation of rights and fails to seek a timely declaratory judgment, it does so at the peril that it might later be found to have breached its duty to defend. *Maneikis v. St. Paul Insurance Co. of Illinois*, 655 F.2d 818, 821 (7th Cir.1981). Once the insurer breaches its duty to defend it is estopped from denying policy coverage in a subsequent lawsuit by the insured or the insured's assignee. *Id.* This estopped arises at the moment the insurance company refuses to defend. *Id.* at 822. As discussed later, the only exception to the estopped rule occurs where the insurer would have faced a conflict of interest if it had defended the insured. *Thornton*, 74 Ill.2d 132, 23 Ill.Dec. at 549, 384 N.E.2d at 343.

The inquiry here, therefore, is whether the insurer's refusal to defend breached the insurance contract. *Maneikis*, 655 F.2d at 822. "Since an insurer's duty to defend is broader than its duty to indemnify in Illinois, an insurer's refusal to defend is wrongful if the allegations in the underlying lawsuit are even *potentially* within the scope of the policy...." *Id.* (emphasis in original). The Court believes that had the defendant sought a declaratory judgment before or pending the original action, the Court would have declared, that based on the second-amended counterclaim, the policy affords no coverage. The second-amended counterclaim was based on a breach of warranty theory for the sale of a defective pool. However, the policy in question specifically excludes damage to the product or work of the insured. The same policy and an identical claim was analyzed, and the same conclusion was reached in *Western Casualty & Surety Co. v. Brochu*, 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872 (1985). Unfortunately, the inquiry here is not whether there was cover-

age but whether the allegations of the second-amended counterclaim fell *potentially* within the scope of the policy. The Court is convinced that under this low threshold requirement the insurer breached its duty to defend.

In Count I and III of the second-amended counterclaim, the plaintiffs allege they sustained the expense of removing the defective swimming pool and installing a comparable swimming pool. They also indicated in these counts that the swimming pool collapsed. This latter point should have put insurer on notice that there could have been damage to the plaintiffs' property. The court in *Trovillion v. U.S. Fidelity and Guaranty Co.*, 130 Ill.App.3d 694, 86 Ill.Dec. 39, 43, 474 N.E.2d 953, 957 (1985), faced a complaint even less revealing than the counterclaim here, and it decided that the assertions there potentially fell within the purview of the policy. Therefore, the Court holds that the defendant breached its duty to defend when it refused the defense of the second-amended counterclaim. It is now estopped from asserting lack of coverage in this proceeding. Based on this holding, the Court need not reach the defendant's argument that the third-amended counterclaim was never tendered to the defendant, or the plaintiffs' allegation of fraud on the part of the defendant in coaxing them into amending the counterclaim.

▇ The Court does not believe that the narrow exception to the above rules announced in *Thornton* is applicable here. In *Thornton*, the plaintiff filed an action against Ben Paul for personal injuries suffered when Paul struck him on the head with a wooden club. Paul's insurer refused to defend on the grounds that the policy did not cover for damages caused by an intentional tort such as a battery. A default judgment was later entered against Paul for $30,000. Sometime prior to the default, Paul and Thornton entered into an agreement whereby in exchange for $100, Thornton would not execute judgment on Paul, but would pursue the insurer. Thornton then instituted a garnishment action against the insurer for the $30,000.

After a hearing, the trial court ordered the insurer to pay the $30,000. The appeals court affirmed both this order and the lower court's order refusing to vacate the default judgment. After discussing the various principles expressed above, the Illinois Supreme Court held that even though the insurer failed to seek a declaratory judgment or defend under a reservation of rights, it was not estopped from raising lack of coverage in the garnishment proceeding because of the conflict of interest it would have faced had it defended the original action. *Thornton*, 74 Ill.2d at 144, 23 Ill.Dec. at 549, 384 N.E.2d at 343. The court stated that:

> We noted earlier, that, under the facts of this case, the general rule that the insurer is estopped, because of its failure to defend, from asserting lack of coverage in a garnishment proceeding does not apply ... Clearly, if Illinois Foudners would have accepted the defense of the amended complaint, there would have been a direct conflict between its interest and those of the defendants....
>
> Although, the allegations of the complaint determine whether or not the insurer is obligated to provide a defense, when there is a conflict of interests, as in the present case, the insurer should not be obligated or permitted to participate in the defense of the case. Its obligation to provide a defense should be satisfied by reimbursing the insured for the costs of the defense.

*Id.*

The few Illinois cases invoking the *Thornton* exception have done so only where the potential conflict of interest was complete, where the disputed issue could only be resolved into one of two mutually exclusive outcomes, one which benefited the insured and one which benefited the insurer. *Maneikis*, 655 F.2d at 825. For example, in *Thornton* the insured's actions were either intentional or negligent, but not both. Likewise, see *Home Insurance Co. v. Lorelei Restaurant Co.*, 83 Ill. App.3d 1083, 39 Ill.Dec. 304, 307, 404 N.E.2d 895, 898 (1980) (arson or negli-

gence); *Aetna Casualty & Surety Co. v. Dichtl*, 78 Ill.App.3d 970, 34 Ill.Dec. 759, 763, 398 N.E.2d 582, 586 (1979). (the insured killed her husband either intentionally or because she was insane); *Associated Indemnity Co. v. Insurance Co. of North America*, 68 Ill.App.3d 807, 25 Ill.Dec. 258, 268, 386 N.E.2d 529, 539 (1979) (driver was either an agent or an independent contractor). The defendant here alleges that there is a conflict of interest since it would have an incentive to assign to insured's product as much of the damage as possible. However, unlike the cases above, the conflict is not complete, since it is quite possible, if not probable, that there would be both damage to the pool and to the plaintiffs' property. Therefore, the *Thornton* exception is inapplicable to the case at hand.

In summary, the Court holds that the defendant breached its duty to defend the insured based on the second-amended counterclaim, since the allegations contained therein potentially fell with the purview of the policy. As a result, the defendant is estopped from asserting a lack of coverage in this proceeding.

 The Court would be inclined to grant summary judgment for the plaintiffs were it not for the defendant's strong allegations of fraud and collusion. Taken at face value, the Court characterizes the plaintiffs' action as "sharp" as that term was used in *Thornton*. After the defendant refused to defend, the plaintiffs amended their counterclaim for a third time to clearly fall with the terms of the policy and state damages for the policy limit, and thereafter entered into an agreement whereby the Norrises would not contest their summary judgment motion in exchange for the plaintiffs' assurance that they would only pursue the defendant for the judgment. There is no indication that the defendant was ever notified that a third-amendment had been filed or that such an agreement was reached, nor is there any indication that the trial court was apprised of this agreement. Even though the defendant has not supported the allegations of collusion, this Court feels that the bare facts as stated above are enough to get this case, as to that point, before the jury. While an insurer who breaches its duty to defend is liable for the amount of an judgment or reasonable settlement, the Court does not believe that once the insurer breaches this duty the remaining parties are given carte blanche to essentially force a unilateral judgment or settlement on an unsuspecting insurer. The Court believes the correct rule of law to be that the breaching insurer must pay the judgment or reasonable settlement *absent collusion or bad faith* by the insured and the injured party. See *Carter v. Aetna Casualty and Surety Co.*, 473 F.2d 1071 (8th Cir.1973). If the jury finds there to be collusion or bad faith, then the insurer would only be liable for the damages reasonably sustained to the *plaintiff's property*. The defendant would not be totally relieved of its duty pay, since it breached its duty to defend. By the same token, the plaintiffs would not reap the benefits of estoppel, but would be limited to recovery of only that portion of the damages which the policy actually covers. The defendant has the burden of proof as to the collusion or bad faith issue.

Accordingly, the defendant's Cross-Motion for Summary Judgment (Document No. 27) is hereby DENIED. The plaintiff's Motion for Summary Judgment (Document No. 14) is GRANTED in part and DENIED in part. Pursuant to Fed.R.Civ.P. 56(d) the Court finds that the defendant breached its duty to defend based on the allegations in the second-amended counterclaim. It is therefore estopped from asserting non-coverage in this proceeding. A trial will be held for the limited purpose of determining the collusion issue expressed above. The trial schedule is amended as follows: A final pretrial conference will be held at 9:30 a.m. on October 4, 1985 in East St. Louis. Discovery will end on October 25, 1985. The trial date will be November 4, 1985, in East St. Louis, at 9:30 a.m.

IT IS SO ORDERED.