2023 IL App (1st) 221708-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
July 25, 2023

No. 1-22-1708

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| MHM CORRECTIONAL SERVICES, INC., CENTURION OF MINNESOTA, LLC, CENTURION OF MISSISSIPPI, LLC, and MASSACHUSETTS PARTNERSHIP FOR CORRECTIONAL HEALTHCARE, LLC, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs, | ) ) | No. 15 CH 18000 |
| v. | ) ) | The Honorable |
| EVANSTON INSURANCE COMPANY, | ) ) ) | Sophia H. Hall and Clare J. Quish, Judges Presiding. |
| Defendant-Appellee | ) ) | |
| (Centurion of Mississippi, LLC, Plaintiff-Appellant). | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1   *Held:*   Insurer initially undertaking defense subject to reservation of rights was not estopped from disclaiming coverage prior to obtaining judicial ruling on duty to defend. Underlying federal complaint was not constructively amended by order granting motion for class certification. Letter tendering defense of state department of corrections to insured pursuant to insured's contractual undertaking was not a demand for monetary damages triggering insurer's duty to indemnify insured's payment of department's defense costs.

¶ 2   The plaintiff, Centurion of Mississippi, LLC (Centurion), appeals the trial court's entry of

summary judgment in favor of the defendant, Evanston Insurance Company (Evanston), based upon its finding that Evanston owed no duty to defend or indemnify Centurion in an underlying class action pending in a Mississippi federal court. We affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4        This appeal arises out of a declaratory judgment action brought by four related companies that provide health care services within correctional institutions. Each plaintiff sought to establish its respective entitlement to insurance coverage from Evanston for six separate underlying class-action lawsuits challenging the constitutional adequacy of the medical care provided within various correctional facilities. In a previous interlocutory appeal, this court addressed Evanston's duty to defend two of the four plaintiffs in three of the six underlying cases. *MHM Correctional Services, Inc. v. Evanston Insurance Co.*, 2021 IL App (1st) 200552-U. There we held that the policy language at issue imposed a duty to defend upon Evanston in those cases, regardless of whether the underlying class plaintiffs sought damages or merely injunctive relief. *Id.* ¶ 1.

¶ 5        Centurion, the appellant here, was not a party to that earlier appeal. It is a provider of medical and mental health services in Mississippi. Effective July 1, 2015, it entered into a contract with the State of Mississippi Department of Corrections (MDOC) to provide medical and mental health care services for inmates in the MDOC'S custody, including those at the East Mississippi Correctional Facility (EMCF). As part of that contract, Centurion expressly undertook the duty to defend and indemnify the MDOC and its officials and employees in a lawsuit that had been pending against them since 2013, Dockery et al. v. Epps et al., No. 3:13-cv-00326-WHB-JCG (S.D. Miss.) (Dockery lawsuit).

¶ 6        The Dockery lawsuit was a class action filed on behalf of prisoners at EMCF, a facility intended for the treatment of prisoners with mental illness, against the MDOC's commissioner, its

deputy commissioner for institutions, and its chief medical officer. The aspect of the complaint pertinent to this appeal alleged in summary that the medical and mental health needs of prisoners there are systematically untreated and ignored by prison staff, thereby violating inmates' constitutional right to be free from cruel and unusual punishment. With respect to mental health care, it alleged that inmates at EMCF are provided with minimal, if any, individual or group mental health treatment; they are over-medicated with tranquilizing anti-psychotic medications; their mental health symptoms are exacerbated by an environment of chaos and isolation that exists there; and they are subjected to discipline if they attempt to seek help from medical staff.

¶ 7       With respect to medical care provided to inmates, the complaint alleged that EMCF is not sufficiently staffed to provide inmates with adequate medical treatment, that they experience long delays in being seen by healthcare providers, that treatment is often provided by nurses regardless of the nature or seriousness of the problem, and that inmates do not receive prescribed medications as ordered. It also alleged that inmates are denied treatment for chronic medical conditions and pain management, that they receive untimely and insufficient dental and other medical care, that they are required to wait extended periods of time to see outside specialists, and that prison officials often deny treatment plans and corrective surgeries recommended by outside specialists.

¶ 8       The complaint alleged that these deficiencies in the provision of health care are due in part to the defendants' utilization of private, for-profit contractors to provide medical and mental health services at EMCF, their entry into contracts with them that call for a level of staffing inadequate to meet the treatment needs of inmates, and their failure to monitor the actions of these contractors. The contractor that had provided healthcare services at EMCF at the time the complaint was filed was Health Assurance LLC, and the complaint alleged that the defendants hired Health Assurance despite the MDOC experiencing prior problems with its mistreatment of inmates at other facilities

and knowing that it was ill-equipped to operate a psychiatric prison or to provide inpatient-level care to seriously mentally ill prisoners. The complaint sought injunctive relief, including that the defendants develop and implement a plan for the provision of timely access to adequate medical care and treatment for mental illness and for adequate monitoring and performance remediation of the private healthcare contractors to which the defendants delegated the operation of EMCF. It is undisputed that, once Centurion took over as the new healthcare service provider at EMCF on July 1, 2015, the complaint in the Dockery lawsuit was never amended to name Centurion as a defendant or to allege any conduct on Centurion's part.

¶ 9        On July 1, 2015, the Attorney General of Mississippi sent a letter to Centurion formally requesting that it undertake the defense and indemnification of the MDOC officials in the Dockery lawsuit pursuant to the terms of its contract. On July 20, 2015, Centurion responded by agreeing that it would defend the MDOC "on a going forward basis," subject to a reservation of rights. Centurion asserted that its obligation to defend and indemnify only extended to claims arising out of or caused by Centurion's performance or nonperformance of its contract with the MDOC.

¶ 10       Around this same time, Centurion tendered the defense of the MDOC officials in the Dockery lawsuit to Evanston under the liability insurance policy at issue. On August 31, 2015, Evanston's claim service manager (Markel) responded by agreeing to defend subject to a reservation of rights. The reservation of rights largely pertained to the fact that all claims in the Dockery lawsuit preceded the time when Centurion became the healthcare service provider for the MDOC.

¶ 11       On September 29, 2015, the federal district court in the Dockery lawsuit entered an order granting a motion for class certification. See *Dockery v. Fischer*, 253 F. Supp. 3d 832 (S.D. Miss. 2015). That order articulated that the issue in the case was whether the "current" policies and practices at EMCF subjected class members to a substantial risk of serious harm or injury from,

*inter alia*, inadequate medical and mental health care, thus violating their constitutional rights. *Id.* at 842. The class and various subclasses were comprised of individuals who are "currently" or who will in the future be confined at EMCF. *Id.* at 856-57. The order did not mention Centurion.

¶ 12　　　On December 21, 2015, Evanston's attorneys notified Centurion that Evanston was disclaiming coverage for Centurion and any obligations to the MDOC officials named as defendants in the Dockery lawsuit. The present declaratory judgment action was filed by that time, and on February 25, 2016, the complaint was amended to add counts on behalf of Centurion concerning the Dockery lawsuit, asserting that Evanston was obligated under the applicable policy to provide a defense and indemnification in that case and that its refusal to do so was in bad faith.

¶ 13　　　A bench trial in the Dockery lawsuit commenced on March 6, 2018. The district court then ordered the parties' expert witnesses to file supplemental posttrial reports concerning the then-existing conditions at EMCF. The district court ultimately entered judgment in favor of the MDOC officials on all the class plaintiffs' claims, and that judgment was affirmed on appeal. See *Dockery v. Hall*, 443 F. Supp. 3d 726 (S.D. Miss. 2019), *aff'd*, 7 F.4th 375 (5th Cir. 2021).

¶ 14　　　On August 30, 2018, the trial court below entered an order denying Centurion's motion for summary judgment on the issue of Evanston's duty to defend and indemnify in the Dockery lawsuit. Central to the trial court's ruling was the fact that the complaint in the Dockery lawsuit had been filed in 2013, two years prior to the time when Centurion began providing services to the MDOC. Thus, the trial court found, no potential existed that any of the allegations in that complaint could be referring to services or conduct by Centurion. Based on this, the trial court reasoned that coverage could not be extended to the MDOC under the policy's additional insured endorsement, which limited coverage of an additional insured solely to claims or expenses "arising from Professional Services rendered by the Named Insured" (*i.e.*, Centurion). The trial court further

noted that the policy was a claims-made policy, in which the insuring agreement provided that Evanston shall pay sums "which the Insured shall become legally obligated to pay as Damages as a result of Claims *first made* against the Insured during the Policy Period." (Emphasis added). The trial court reasoned that the fact that the Dockery lawsuit had been on file since 2013 meant that no claim was "first made" during the policy period of July 1, 2015, to July 1, 2016.

¶ 15 Centurion thereafter filed a motion to reconsider, in which it argued that the trial court had erred by limiting its analysis to the allegations of the underlying complaint. Centurion argued that the trial court's conclusion that the underlying complaint could never concern its services was erroneous "because federal practice recognizes that a complaint can be constructively amended by pretrial rulings and party conduct to encompass claims beyond those initially pleaded." It contended that the record in the Dockery lawsuit, which it had asked the trial court to consider before issuing its prior decision, showed that the complaint had been constructively amended to encompass claims involving Centurion's services. On May 10, 2019, the trial court denied Centurion's motion to reconsider, rejecting its constructive amendment argument.

¶ 16 While Centurion's motion to reconsider was pending, Centurion also filed a separate motion for summary judgment on Evanston's duty to indemnify it for the amounts it had paid as defense costs to counsel for the MDOC officials in the Dockery lawsuit. On September 15, 2021, the trial court denied that motion. Recognizing that the policy's insuring agreement limited Evanston to payment of sums that an insured became legally obligated to pay as "Damages" as a result of "Claims" first made against the insured during the policy period, the trial court first concluded that Centurion was not seeking coverage for a "Claim" as defined in the policy. Specifically, it rejected Centurion's argument that the Attorney General's letter of July 1, 2015, which tendered the MDOC's defense and indemnification in the case to Centurion, met the policy's definition of a

"Claim," reasoning that it did not demand "monetary damages." In doing so, the trial court also rejected Centurion's argument that its response to the Attorney General, agreeing to defend the MDOC on a going-forward basis only, constituted a "settlement" that brought its payments to defense counsel within the policy's definition of "Damages."

¶ 17      In that same ruling, the trial court again rejected Centurion's argument that a "Claim" was made against Centurion through constructive amendment of the complaint in the Dockery lawsuit. The trial court found that, despite the references to "current" healthcare services and inmates in the federal court's class certification order, that order did not result in constructive amendment of the pleadings to add Centurion as a defendant. Finally, the trial court considered and determined that the policy's contractual liability exclusion applied and excluded coverage for the MDOC's defense costs that Centurion contractually agreed to pay.

¶ 18      On November 12, 2021, Evanston filed its own motion for summary judgment on all counts of the complaint by Centurion pertaining to coverage for the Dockery lawsuit. It contended that, for the same reasons that the trial court had denied the various motions by Centurion set forth above, Evanston was entitled to summary judgment in its favor.

¶ 19      On October 24, 2022, the trial court granted Evanston's motion for summary judgment. It first found no duty to defend. It reasoned that the policy was a claims-made policy in which coverage was limited to claims first made against the insured during the policy period of 2015-2016, and the Dockery lawsuit was not a claim first made during that period. In so ruling, it rejected Centurion's argument that Evanston was estopped from raising coverage defenses because, by agreeing to defend under a reservation of rights but withdrawing prior to obtaining a declaratory judgment on coverage, it had breached its duty to defend. The trial court found that Centurion had shown no prejudice by Evanston's withdrawal of its defense. Also, the trial court again rejected

the argument that the class certification order had resulted in the constructive amendment of the complaint in Dockery to implicate Centurion's conduct. The trial court found no duty to indemnify, for largely the same reasons set forth in its prior order denying Centurion's motion for summary judgment on indemnification. Finally, it found that Centurion's failure to establish coverage under the policy precluded any claim that Evanston denied coverage in bad faith. This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21        Centurion raises three principal arguments on appeal in challenging the trial court's determination that Evanston owed no duty of defense or indemnification in the Dockery lawsuit. First, it contends that Evanston is liable for Centurion's costs of defending the MDOC officials in the Dockery lawsuit because it withdrew its defense without obtaining a declaratory judgment of noncoverage. Second, it argues that the complaint in the Dockery lawsuit should be deemed to have been constructively amended by the class certification order, so as to trigger Evanston's duty to defend. Third, it argues that its agreement to pay the defense costs of the MDOC officials should be considered money paid as a "settlement," thereby bringing the payments within the scope of the policy's insuring agreement. Additionally, it argues that it had a meritorious bad faith claim.

¶ 22        The entry of summary judgment on the basis that an insurer owes no duty to defend or indemnify under an insurance policy presents a legal question that we review *de novo*. *Aetna Casualty & Surety Co. v. O'Rourke Bros., Inc.*, 333 Ill. App. 3d 871, 878 (2002). Summary judgment is properly granted where no genuine issue exists as to any material fact in the case and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022).

¶ 23                              A. Withdrawal of Defense

¶ 24        Centurion's first argument is that Evanston's initial agreement to defend under a reservation of rights obligated Evanston to continue providing that defense until it obtained a judicial

determination that the claim was not covered by the policy. Accordingly, Centurion argues, because Evanston withdrew its defense prior to obtaining a declaratory judgment of noncoverage, Evanston is liable for Centurion's defense costs in the Dockery lawsuit.

¶ 25    This court has rejected a nearly identical argument in *State Farm Fire & Casualty Co. v. Martinez*, 384 Ill. App. 3d 494, 498-99 (2008). There, three defendants in a dog-bite action sought coverage under a homeowner's policy issued by State Farm. *Id.* at 495. State Farm initially agreed to defend all three defendants, subject to a reservation of rights to contest coverage on issues concerning whether the defendant who owned the dog qualified as an insured under the policy issued to the other two defendants. *Id.* at 496. About five weeks after its initial agreement to defend, State Farm denied coverage to the dog's owner without pursuing any action for declaratory judgment. *Id.* The underlying case against the dog's owner settled with a consent judgment and assignment of any rights to recovery against State Farm. *Id.* at 497. Only then did State Farm file a declaratory judgment action, two years after its disclaimer of coverage. *Id.*

¶ 26    The argument on appeal was that State Farm was estopped from raising any defenses to coverage because it breached its duty to defend by initially agreeing to defend but then abandoning that defense without filing a timely declaratory judgment action. *Id.* at 498. This court rejected that argument, setting forth the law that an insurer taking the position that its policy does not provide coverage has two options: (1) seek a declaratory judgment to determine its obligation to defend or (2) defend under a reservation of rights. *Id.* "An insurer who notifies its insured that it is defending the insured under a reservation of rights and identifies the policy provisions that may preclude coverage is not estopped from subsequently denying coverage." *Id.* This court held that State Farm's actions complied with its duty to defend and that it was not estopped from asserting coverage defenses by its withdrawal of its agreement to defend. *Id.* at 498-99.

¶ 27    The reasoning of *Martinez* likewise leads us to reject Centurion's argument that Evanston's withdrawing of its initial defense prior to obtaining a declaratory judgment of coverage rendered it liable for Centurion's costs to defend the MDOC officials in the Dockery lawsuit. Evanston, faced with a demand for coverage, initially agreed to provide a defense subject to a reservation of rights. That reservation of rights largely concerned the fact that the Dockery lawsuit was already pending by the time Centurion began providing services to the MDOC on July 1, 2015, and thus the injuries at issue in the case did not arise from Centurion's services. Within four months, Evanston's counsel sent a letter to Centurion disclaiming coverage and withdrawing its defense on multiple grounds, including that no claim was asserted against Centurion, the policy excluded claims for liability assumed by contract, and the claims at issue occurred prior to the policy period. Within two months of that disclaimer, the complaint in this declaratory judgment case was amended to add counts for Centurion's claim against Evanston concerning its coverage obligations in the Dockery lawsuit. The fact that Evanston defended a declaratory judgment action initiated by Centurion instead of filing its own action does not constitute a breach of its duty, particularly where only two months passed before the complaint was amended. See *L.A. Connection v. Penn-America Insurance Co.*, 363 Ill. App. 3d 259, 263-66 (2006). Accordingly, Evanston was at all times in compliance with its obligations to either defend under a reservation of rights or to litigate a timely coverage action, and it was not estopped from raising coverage defenses on the basis that it withdrew its initial agreement to defend subject to a reservation of rights.

¶ 28    We reject the notion advanced by Centurion that Illinois recognizes a rule of law whereby an insurer that initially provides a defense under a reservation of rights must, at the risk of being held liable for all defense costs regardless of the existence of a duty to defend, always continue such a

defense until it obtains a final judicial determination of noncoverage.[1] It cites the following statement from a 1968 second district case: "If [an insurer] elects to defend under a reservation of rights, it must continue such defense until there is a final determination that the claim is not covered by the policy." *Country Mutual Insurance Co. v. Murray*, 97 Ill. App. 2d 61, 73 (1968). However, this statement in *Murray* flowed in part from the since-rejected rule that an insurer wishing to assert policy defenses to coverage must either "secure" a declaratory judgment while defending the insured under a reservation of rights or adjudicate coverage in a supplemental suit after defending its insured under a reservation of rights. See *id.* Our supreme court has since held that an insurer is not required to "secure" a declaratory judgment on coverage before the underlying suit concludes; it is required only to seek a declaratory judgment in a timely manner, and the issue of coverage may be determined after the conclusion of the underlying suit. *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 374 (1999). Further, the statement from *Murray* relied upon by Centurion cites California law exclusively, and it appears never in 55 years to have been cited by any Illinois reviewing court for the proposition advanced by Centurion here.

¶ 29        The two other cases cited by Centurion, *Trovillion v. United State Fidelity & Guaranty Co.*, 130 Ill. App. 3d 694 (1985), and *General Agents Insurance Co. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146 (2005), likewise do not support the existence of such a rule. In *Trovillion*, when the fifth district stated that an insurer undertaking defense subject to a reservation of rights cannot withdraw but is obliged to seek a declaration of coverage, it was applying a rule that an insurer breaches its duty to defend by refusing to participate in underlying litigation and waiting for the insured to initiate a declaratory judgment action. *Trovillion*, 130 Ill. App. 3d at 698-99. More

---

[1] Centurion insists that the rule of law for which it is arguing in this aspect of its argument is not an application of the doctrine of estoppel.

modern cases, including those from this district, do not distinguish between whether a declaratory judgment action is filed by the insured rather than the insurer, provided the issue is timely litigated. See *L.A. Connection*, 363 Ill. App. 3d at 263-64 (collecting cases). *Trovillion* also applied the since-rejected rule discussed above that an insurer must "secure" a declaratory judgment "before or pending trial of the original action." *Trovillion*, 130 Ill. App. 3d at 700. Accordingly, we do not find *Trovillion* to provide support for Centurion's argument.

¶ 30    In *General Agents*, the supreme court's statement that an insurer had remained obligated to defend its insured until a court declared that it had no duty to defend was made in the context of a discussion about whether the insurer was entitled to reimbursement of its defense costs based on an ultimate determination of noncoverage. *General Agents*, 215 Ill. 2d at 165-66. The court made this statement in the context of observing that the case had presented an uncertain question of coverage, that the insurer had thus rightly defended under a reservation of rights until the issue of coverage was resolved, and that the later finding that no duty to defend existed was not controlling on the issue of reimbursement. *Id.* The supreme court was not addressing a situation in which an insurer had withdrawn a defense provided under a reservation of rights, and we do not interpret its statement as setting forth a rule applicable in such instance.

¶ 31    In addition to arguing for the existence of the rule of law addressed above, Centurion also argues that Evanston waived its right to withdraw the defense it provided without obtaining a judicial determination of coverage. Waiver involves the voluntary relinquishment of a known right, and it arises from an affirmative, consensual act that intentionally relinquishes the known right. *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 66.

¶ 32    In support of its waiver argument, Centurion cites the statement in Evanston's reservation of rights letter that it reserves the right "to withdraw from the Insured's defense *if it is determined*

that there is no coverage for the claim." (Emphasis added.) Centurion argues that this amounts to an agreement by Evanston not to withdraw without a judicial determination, "because insurers consistently use the phrase 'if it is determined' in this context to mean determination by a court." However, none of the cases cited by Centurion involve a court finding waiver under similar facts. They are simply examples of insurers using the phrase "if it is determined" in reservation of rights letters. We disagree that this statement in the reservation of rights letter amounted to a consensual and intentional relinquishment by Evanston of its right to withdraw it defense prior to obtaining a judicial determination of coverage. We thus find no waiver.

¶ 33    Finally, Centurion argues that it detrimentally relied to its prejudice on Evanston's agreement to defend the MDOC officials in the Dockery lawsuit and that, because of this prejudice, Evanston is estopped from withdrawing its defense. Centurion cites *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 499-500 (1985), which recognized that "[a]n insurer may be estopped from asserting a defense of noncoverage if it undertakes the defense of an action and that undertaking results in some prejudice to the insured." We note that this argument involves equitable estoppel, which normally applies where an insurer initially undertakes a defense *without reserving its rights* and later seeks to dispute coverage; the rule in such instances is that the insurer is not equitably estopped from denying coverage unless prejudice exists. See *United Farm Family Mutual Insurance Co. v. Frye*, 381 Ill. App. 3d 960, 969 (2008).

¶ 34    We agree with the trial court's conclusion that Centurion has failed to show evidence that it was prejudiced by Evanston's decision to withdraw its defense. The only evidence cited by Centurion is a purported judicial admission involving Evanston's answer to the allegation in the amended complaint that, "[w]ith the approval of Western Litigation and Markel, in a letter dated July 20, 2015, Centurion-Mississippi agreed to defend MSDOC in the *DePriest* and *Dockery*

Litigations 'on a going forward basis' subject to a reservation of rights." Even if Evanston made an evasive answer to this allegation of the amended complaint that constituted a judicial admission, this does establish or raise an issue of fact about prejudice. Although we find Centurion's argument to be less than clear about why this admission shows that it suffered prejudice from the withdrawal, the suggestion seems to be that it detrimentally relied on a promise by Evanston to assume or pay for the defense when Centurion initially agreed to defend the MDOC in the Dockery lawsuit. However, we find that the purported admission is not sufficient as evidence to support such an inference. Accordingly, we hold that Evanston was not equitably estopped from withdrawing its defense on the basis of prejudice.

¶ 35                    B. Constructive Amendment of Underlying Complaint

¶ 36        Centurion's second argument on appeal is that the complaint in the Dockery lawsuit should be deemed to have been "constructively" amended by the district court's class certification order of September 29, 2015. Centurion cites that order's identification of the "current" conditions at EMCF as being the issue in the case. Centurion thus argues that the adequacy of the services it was providing at EMCF by that time became "the issue for litigation." Accordingly, it contends, under the reasoning of the prior interlocutory appeal in this case, the MDOC officials qualified as additional insureds that Evanston was required to defend. See *MHM Correctional Services*, 2021 IL App (1st) 200552-U, ¶¶ 51-55. The policy's additional insured endorsement provides that an additional insured includes any person or organization to whom or which a named insured is obligated by virtue of a written contract to provide insurance or indemnity, "but only for claims made against the Additional Insured with respect to professional services rendered by the Named Insured."

¶ 37        In general, an insurer may justifiably refuse to defend an action against an insured only where

it is clear from the face of an underlying complaint that the allegations set forth in it fail to state facts that bring the case within or potentially within the insured's policy coverage. *General Agents*, 215 Ill. 2d at 154 (citing *United State Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991)). A court determines whether a duty to defend has arisen by comparing the allegations in the underlying complaint to the policy language. *General Agents*, 215 Ill. 2d at 154-55 (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992)). If the underlying complaint alleges facts within or potentially within the policy's coverage, then the insurer is obligated to defend, even if the allegations are groundless, false, or fraudulent. *General Agents*, 215 Ill. 2d at 155.

¶ 38     In this case, there is no dispute that the actual complaint in the Dockery lawsuit neither named Centurion (as a defendant or otherwise) nor included any allegations arising from the services that Centurion provided at EMCF. This is because it was filed on May 30, 2013, over two years before Centurion began providing any services to the MDOC. No amended complaint was ever filed.

¶ 39     Accordingly, a comparison of the *actual* complaint in the Dockery lawsuit to the policy leads inevitably to the conclusion that its allegations are not within the policy's coverage. The policy imposes a duty to defend "any Claim to which coverage under this policy applies." It is a "claims made" policy, meaning that the risk insured against is that a claim will be brought by a third party during the policy period. See *Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh*, 398 Ill. App. 3d 710, 715 (2010). It thus provides that Evanston will pay sums that an insured becomes legally obligated to pay "as Damages as a result of Claims first made against the Insured during the Policy Period," which was July 1, 2015, to July 1, 2016. A "Claim" may be either a "demand for monetary damages or services involving Professional Healthcare Services" or the "service of a suit *** against the Insured involving Professional Healthcare Services."

Because the actual complaint was filed and served in 2013 against the MDOC officials (who are the purported insureds by virtue of the additional insured endorsement), any "Claim" against them was not "first made" during the policy period and is therefore not within the policy's coverage.

¶ 40     In an effort to surmount this, Centurion argues that we should consider the underlying complaint to have been constructively amended by the class certification order to add a claim arising from the services provided at EMCF by Centurion.  For its part, Evanston asserts that no authority exists for a court to find a duty to defend or indemnify based on a theory of constructive amendment.

¶ 41     We see no need to undertake a discussion about whether constructive amendment of a federal complaint could ever give rise to a duty to defend, because we find it clear in this case that the class certification order did not have the effect of constructively amending the complaint or otherwise placing the services rendered by Centurion at issue in the Dockery lawsuit. The gravamen of the allegations in the 2013 complaint against the three MDOC officials was that they had abdicated their responsibilities to care for the inmates in their custody by relying on private, for-profit contractors which lacked proper qualifications and experience and had "strong incentive to maximize profits at the expense of prisoner wellbeing." It further alleged that the MDOC officials had entered into contracts with these for-profit contractors that called for levels of staffing at EMCF that were not adequate to meet the needs of inmates. And it alleged that the MDOC officials failed to conduct adequate oversight of the actions taken by the contractors it hired.

¶ 42     Specific to medical and mental health care, it alleged that in April 2012 the MDOC officials had retained Health Assurance as EMCF's healthcare contractor, despite experiencing prior problems with Health Assurance at a different facility and knowing that it lacked experience operating a psychiatric prison or providing inpatient-level care to inmates with serious mental

illnesses. The complaint provided the example that the contract that the MDOC had entered into with Health Assurance required it to provide an on-site psychiatrist only twice a week, whereas previously a psychiatrist had been at EMCF every day. Thus, the claim was that these kinds of failures by the MDOC officials to ensure that EMCF was adequately staffed with qualified medical professionals led to various problems that inmates were experiencing as of May 2013: minimal levels of mental health treatment, over-medication with tranquilizers, long delays to see medical professionals, treatment by nurses instead of physicians, failure to receive medications as ordered, and the like. This claim of inadequate staffing and oversight of private contractors was also what the injunctive relief requested in the compliant was intended to address: that plans be developed and implemented by the MDOC for the provision of timely access to adequate medical care and treatment for mental illness and for adequate monitoring and performance remediation of the private healthcare contractors to which the MDOC delegated the operation of EMCF.

¶ 43      Therefore, when the September 2015 class certification order stated that the "current" conditions at EMCF were at issue in the case, it was not injecting a claim into the case that was any different than the claim that had been raised in the complaint. The pertinent issue remained whether the MDOC was contracting with private service providers and ensuring that EMCF was staffed in a way that provided prisoners in its care with levels of medical and mental health care that were constitutionally adequate. The fact that the MDOC terminated its relationship with Health Assurance and hired Centurion as its new healthcare service provider during the course of the litigation did not cause a new or different claim to be made with respect to services rendered by Centurion. We thus reject any argument that the complaint was constructively amended by the class certification order so as to give rise to a duty to defend on the part of Evanston.

¶ 44      Furthermore, we reject Centurion's argument that Evanston made a judicial admission in its

answer to the amended complaint that the Dockery lawsuit included claims based on services provided by Centurion during the 2015-2016 policy period. The amended complaint alleged that Centurion had retained a law firm to defend the MDOC in the Dockery lawsuit on a forward-looking basis, and in connection with the MDOC's tender of the Dockery lawsuit, that law firm "has been representing individual MSDOC defendants for medical claims which have arisen since July 1, 2015, under the MSDOC Contract." Evanston's answer admitted these allegations. The trial court found that Evanston was not, by its answer to these allegations, admitting that the Dockery lawsuit involved claims against Centurion or claims implicating services that Centurion provided. We agree with the trial court's assessment and conclusion that this admission does not establish a duty to defend.

¶ 45                              C. Duty to Indemnify for Defense Costs

¶ 46        Centurion's third argument is that it is entitled to indemnification from Evanston for the defense costs it paid on behalf of the MDOC, because those defense costs were payments in "settlement" of a claim for money due to alleged failures in the health care services provided by Centurion. It reasons that this was a "settlement" because the Attorney General of Mississippi, by its letter of July 1, 2015, made a broad demand for the full defense and indemnification of the MDOC; Centurion then countered that it would provide a limited defense to the MDOC on a going-forward basis; and the settlement was then effected when the MDOC accepted without objection the more-limited defense that Centurion offered and provided. From this premise, it asserts that the Attorney General's letter was a "Claim" under the policy's definition, as it was "[a] demand for monetary damages *** involving Professional Healthcare Services" made during the 2015-2016 policy period. And it reasons that its payment of defense costs met the policy's definition of "Damages," which includes "the monetary portion of any *** settlement."

¶ 47    We find no merit to this argument. Generally, a duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy. *Traveler's Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 293 (2001). In this case, the MDOC officials prevailed in the underling action, and thus neither the MDOC nor Centurion ever became liable to pay damages to the class plaintiffs. Further, because the duty to indemnify is narrower than the duty to defend, no duty to indemnify will exist if there is no duty to defend. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993). Normal application of these legal principles leads to the conclusion that no duty to indemnify arose in this case.

¶ 48    Our review of the policy's indemnification provision does not change this conclusion. That provision obligates Evanston to pay sums "which the Insured becomes legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period." The payments for which Centurion is seeking indemnification here involve money it paid to counsel for the MDOC as defense costs. Centurion's argument that these defense costs were paid pursuant to a "settlement" is unavailing. This is an attempt to fit this payment within the policy's definition of "Damages," which is "the monetary portion of any judgment, award or settlement." However, the "settlement" contemplated by this definition unambiguously refers to a payment to a plaintiff or claimant in compensation for a loss that gives rise to the claim in the underlying litigation, made as part of an agreement that terminates all or part of that underlying litigation. The defense costs for which Centurion is seeking reimbursement here were clearly not a payment of this nature. Likewise, the Attorney General's letter was not demanding a payment of this nature when it requested defense and indemnification of the MDOC by Centurion, and for that reason the letter did not constitute a "Claim" made under the policy. For all these reasons, we hold that Centurion

is not entitled to indemnification from Evanston for the defense costs it paid to the MDOC.

¶ 49                                          D. Bad Faith

¶ 50        Based on our determination that Evanston had no duty to defend or indemnity Centurion in the Dockery litigation, we have no reason to reach Centurion's final argument that Evanston's denial of coverage was in bad faith, thus entitling Centurion to its attorney fees in this coverage action. The parties agree that this issue is governed by a Virginia statute, as the policy was issued in Virginia. Under that statute, the costs and attorney fees allowable to an insured suing an insurer in a coverage action "shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy." Va. Code Ann. § 38.2-209 (2022). As such, the existence of coverage is a prerequisite to a bad faith claim under the Virginia statute. *Builders Mutual Insurance Co. v. Dragas Management Corp.*, 709 F. Supp. 2d 432, 440 (E.D. Va. 2010) (citing *Brenner v. Lawyers Title Insurance Corp.*, 240 Va. 185, 193 (1990)). Here, our holding that Evanston owed no coverage with respect to the Dockery lawsuit precludes any claim by Centurion that Evanston's denial of coverage or refusal to pay was in bad faith. We therefore conclude that the trial court properly granted summary judgment in favor of Evanston on Centurion's bad faith claim.

¶ 51                                        III. CONCLUSION

¶ 52        For the reasons set forth above, the judgment of the trial court is affirmed.

¶ 53        Affirmed.